# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ALABAMA ASSOCIATION OF REALTORS®, *et al.*,
*Plaintiffs-Appellees*,

*v.*

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,
*Defendants-Appellants*

On Appeal from the United States District Court
for the District of Columbia

## EMERGENCY MOTION TO VACATE STAY PENDING APPEAL
## AND FOR IMMEDIATE ADMINISTRATIVE VACATUR

Brett A. Shumate
Charlotte H. Taylor
Stephen J. Kenny
J. Benjamin Aguiñaga
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
bshumate@jonesday.com
*Counsel for Appellees*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...............................................................................ii

INTRODUCTION...........................................................................................1

STATEMENT ................................................................................................4

ARGUMENT ................................................................................................12

I.   The Government Has Not Met The Criteria For A Stay
     Pending Appeal ...................................................................................12

     A.   The Government Is Unlikely To Succeed On The Merits................12

     B.   The Government Cannot Show That The Equities
          Justify A Stay ...............................................................................17

II.  The Law-of-the-Case Doctrine Has No Preclusive Effect Here ...........20

CONCLUSION.............................................................................................24

CERTIFICATE OF COMPLIANCE...............................................................25

CERTIFICATE OF SERVICE.......................................................................26

ADDENDUM

APPENDIX

# TABLE OF AUTHORITIES

Page(s)

Cases

*Belbacha v. Bush,*
520 F.3d 452 (D.C. Cir. 2008)...................................................................21, 22

*Bond v. United States,*
572 U.S. 844 (2014).........................................................................................15

*CASA de Maryland, Inc. v. Trump,*
971 F.3d 220 (4th Cir. 2020).................................................................12, 13, 23

*Cedar Point Nursery v. Hassid,*
141 S. Ct. 2063 (2021) ...................................................................................17

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988).........................................................................................23

*Chrysafis v. Marks,*
No. 21A8, 2021 WL 3560766 (U.S. Aug. 12, 2021).........................................18

*FDA v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000).........................................................................................17

*Franchise Tax Bd. of California v. Hyatt,*
139 S. Ct. 1485 (2019) ...................................................................................20

*Latta v. Otter,*
771 F.3d 496 (9th Cir. 2014).....................................................................12, 23

*Nken v. Holder,*
556 U.S. 418 (2009).................................................................................12, 17

*NTEU v. FLRA,*
30 F.3d 1510 (D.C. Cir. 1994).........................................................................23

*Paul v. United States,*
140 S. Ct. 342 (2019) ...................................................................................15

*Shawnee Tribe v. Mnuchin,*
984 F.3d 94 (D.C. Cir. 2021) .........................................................................18

*Sherley v. Sebelius,*
689 F.3d 776 (D.C. Cir. 2012)...................................................................20, 21

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Solid Waste Agency of N. Cook Cnty. v. U.S.*
*Army Corps of Eng'rs*,
531 U.S. 159 (2001)..................................................15

*Tiger Lily, LLC v. HUD*,
--- F.4th ---, 2021 WL 3121373 (6th Cir. July 23, 2021) ...................14, 15, 16

*Utility Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014).............................................7, 14

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)..................................................16

*Winslow v. FERC*,
587 F.3d 1133 (D.C. Cir. 2009)..................................23

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952)..................................................16

STATUTES

5 U.S.C. § 804 ..........................................................17

15 U.S.C. § 9058 .........................................................4

42 U.S.C. § 264 .........................................5, 13, 14, 15, 16

Consolidated Appropriations Act for 2021,
Pub. L. No. 116-260, 134 Stat. 1182 (2020)......................5

OTHER AUTHORITIES

CDC, *COVID Data Tracker: COVID-19 Vaccinations in the
United States*...........................................................19

CDC, *COVID Data Tracker: Trends in Number of COVID-19
Cases and Deaths in the US Reported to CDC, by
State/Territory*..........................................................19

Exec. Order No. 13,945, 85 Fed. Reg. 49,935 (Aug. 8, 2020) ............................4

81 Fed. Reg. 54,230 (Aug. 15, 2016)..................................16

85 Fed. Reg. 55,292 (Sept. 4, 2020) ................................4, 5

86 Fed. Reg. 8020 (Feb. 3, 2021) .......................................5

# TABLE OF AUTHORITIES
(continued)

Page(s)

86 Fed. Reg. 16,731 (Mar. 31, 2021) ................................................. 5, 19

86 Fed. Reg. 34,010 (June 28, 2021) ................................................. 6, 19

86 Fed. Reg. 43,244 (Aug. 6, 2021) ................................................... 9, 17

*Protecting Renters from Evictions Act of 2021*,
   H.R. 4791, 117th Cong. (2021) ...................................................... 8

Michael D. Shear et al., *As Democrats Seethed, White House*
   *Struggled to Contain Eviction Fallout*, N.Y. Times
   (Aug. 7, 2021) ............................................................................. 8, 18

The White House, *Press Briefing by Press Secretary Jen Psaki*
   (Aug. 3, 2021) ............................................................................. 9

The White House, *Press Briefing by Press Secretary Jen Psaki*
   *and White House American Rescue Plan Coordinator and*
   *Senior Advisor to the President Gene Sperling* (Aug. 2, 2021) ............... 8, 9

The White House, *Remarks by President Biden on Fighting the*
   *COVID-19 Pandemic* (Aug. 3, 2021) ............................................... 2, 9, 20, 24

The White House, *Remarks by President Biden on Strengthening*
   *American Leadership on Clean Cars and Trucks* (Aug. 5, 2021) ............... 10

The White House, *Statement by White House Press Secretary*
   *Jen Psaki on Biden-Harris Administration Eviction*
   *Prevention Efforts* (July 29, 2021) ................................................. 7

## INTRODUCTION

The facts here are as simple as they are disturbing. Earlier this year, the district court vacated an eviction moratorium issued by the Centers for Disease Control and Prevention (CDC) but stayed that final judgment pending appeal. After this Court refused to vacate the stay in an unpublished order, the Supreme Court likewise declined to disturb the stay over the dissent of four Justices. App.56a. In a concurring opinion, Justice Kavanaugh "agree[d] with the District Court" that the CDC "exceeded its existing statutory authority by issuing a nationwide eviction moratorium." *Id.* He nevertheless chose to "vote at this time" not to vacate the stay solely "[b]ecause the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds." *Id.* Justice Kavanaugh made clear, however, that "clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31." *Id.*

As July 31 approached, the White House repeatedly (and sensibly) confirmed that it could not extend the moratorium in light of the Supreme Court's ruling and urged Congress to act instead. But when the proponents

of the moratorium lost in Congress, they mounted a campaign to pressure the President to take matters into his own hands. While the Executive Branch held firm for a few days and allowed the moratorium to lapse, it eventually caved to the political pressure on August 3, when the CDC announced that its eviction moratorium would be extended until October 3, 2021. In a remarkable display of candor, the President acknowledged that this extension was "not likely to pass constitutional muster," but that "by the time it gets litigated, it will probably give some additional time while we're getting that $45 billion out to people who are, in fact, behind in the rent and don't have the money." The White House, *Remarks by President Biden on Fighting the COVID-19 Pandemic* (Aug. 3, 2021), https://bit.ly/3xszwea (Remarks).

Plaintiffs immediately asked the district court to vacate its stay. The court concluded that the CDC's latest order was an extension of the vacated moratorium and hence covered by its earlier judgment, but nevertheless declined to lift the stay. Not because it had second thoughts about the merits; the court agreed that the Supreme Court's ruling "strongly" signaled that the government was unlikely to succeed in its appeal. App.66a. Nor because it thought that the equities favored leaving the moratorium in place; the court agreed that the government had failed to satisfy these factors as well. Rather,

the court allowed unlawful agency action to persist solely because it believed itself bound by this Court's earlier order declining to vacate the stay.

This Court should do what the district court thought it could not. The government cannot satisfy any, much less all, of the criteria for a stay, and tellingly did not even "address any of these factors" below. App.64a. And nothing about the law-of-the-case doctrine permits the Executive Branch to evade, or requires lower courts to ignore, what a majority of the Supreme Court has already made clear.

Given the President's statement that this extension of the moratorium and any litigation in its defense are meant to buy time to keep an unlawful policy in place for as long as possible, this Court should issue an immediate administrative order vacating the stay while it considers this motion. To facilitate this Court's prompt review, and to allow plaintiffs to seek emergency relief in the Supreme Court if necessary, the government has agreed to the following briefing schedule, while opposing the relief requested:

| | |
|---|---|
| **Plaintiffs' Motion To Vacate** | Saturday, August 14, 2021 |
| **Government's Opposition** | By 9:00 a.m. Tuesday, August 17, 2021 |
| **Plaintiffs' Reply** | By 9:00 a.m. Wednesday, August 18, 2021 |

The parties request a ruling on this motion by Thursday, August 19, 2021.

# STATEMENT

1.     As part of the Coronavirus Aid, Relief, and Economic Security Act, Congress adopted a 120-day eviction moratorium prohibiting landlords of properties covered by federal assistance programs or subject to federally-backed loans from evicting tenants for failing to pay rent. 15 U.S.C. § 9058. After that moratorium expired in July 2020 and Congress declined to enact a new one, President Trump directed the CDC to consider issuing a moratorium of its own. Exec. Order No. 13,945, 85 Fed. Reg. 49,935 (Aug. 8, 2020).

The CDC complied. On September 4, 2020, it issued a moratorium that prohibited landlords nationwide from evicting tenants who had submitted a declaration under penalty of perjury affirming that, among other things, they could not pay their rent and would "likely become homeless" or forced to "live in close quarters" if evicted. 85 Fed. Reg. 55,292, 55,297 (Sept. 4, 2020). The CDC's order imposed criminal penalties—enforced by the Department of Justice—of up to a year in jail and/or a fine of $250,000 for individual violators and a fine of $500,000 for organizational ones. *Id.* at 55,296.

As statutory authority for this measure, the CDC invoked Section 361 of the Public Health Service Act, a provision dating from 1944 that gave the agency power to "make and enforce such regulations as in [its] judgment are

necessary to prevent the introduction, transmission, or spread of communicable diseases" across States or from foreign lands. 42 U.S.C. § 264(a); *see* 85 Fed. Reg. at 55,292. According to the CDC, the moratorium was "necessary … to prevent the further spread of COVID-19," 85 Fed. Reg. at 55,296, on the theory that the eviction of covered tenants would lead to transmission of the virus in shared living spaces, *id.* at 55,294-95.

The CDC's moratorium was originally set to expire on December 31, 2020. *Id.* at 55,297. In the Consolidated Appropriations Act for 2021, however, Congress included a provision extending the moratorium through January 31, 2021. Pub. L. No. 116-260, § 502, 134 Stat. 1182, 2078-79 (2020). When Congress did not take any further action, the CDC twice extended its moratorium itself—first through March 31, 2021, and then through June 30, 2021. 86 Fed. Reg. 8020 (Feb. 3, 2021); 86 Fed. Reg. 16,731 (Mar. 31, 2021).

2.     Plaintiffs—two landlords affected by the CDC's order, the businesses they use to manage their properties, and two trade associations—challenged the lawfulness of the eviction moratorium. Following expedited summary-judgment briefing, the district court vacated the moratorium as exceeding the CDC's authority. App.18a-37a. The court nevertheless entered a stay pending appeal based largely on equitable considerations. App.38a-48a.

A motions panel of this Court declined to vacate the stay in an unpublished order on the theory that "[t]he district court did not abuse its discretion in granting a stay in this case." App.49a; *see* App.49a-55a. Emphasizing that it was "of course not resolving the ultimate merits of the legal question," the Panel determined that the government was "likely to succeed on the merits" and that "[t]he district court acted within its discretion in concluding that the [equitable] factors supported its stay." App.50a, 53a.

3.    Plaintiffs then asked the Supreme Court to vacate the stay. While their application was pending, the CDC issued its third extension of the moratorium, this time until July 31, 2021. 86 Fed. Reg. 34,010 (June 28, 2021). The agency explained that "[t]his 30-day extension" was "intended to be the final iteration" of the moratorium to allow the "additional distribution of emergency rental assistance funds" to take place. *Id.* at 34,015.

The Supreme Court declined to vacate the stay by a 5-4 vote. App.56a. Four Justices—Justices Thomas, Alito, Gorsuch, and Barrett—noted that they would have granted the application. Four others—the Chief Justice and Justices Breyer, Sotomayor, and Kagan—did not explain their votes to deny. Justice Kavanaugh, the decisive fifth vote to deny the application, issued a concurring opinion. *Id.* He made clear that he "agree[d] with the District

Court and the applicants that the Centers for Disease Control and Prevention exceeded its existing statutory authority by issuing a nationwide eviction moratorium." *Id.* (citing *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). But "[b]ecause the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds," he decided to "vote at this time to deny the application" based on a "balance of equities." *Id.* Justice Kavanaugh cautioned, however, that "clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31." *Id.*

**4.** On July 29, 2021, the White House announced that the CDC would not extend the moratorium for a fourth time because "the Supreme Court has made clear that this option is no longer available." The White House, *Statement by White House Press Secretary Jen Psaki on Biden-Harris Administration Eviction Prevention Efforts* (July 29, 2021), https://bit.ly/3jm 0K17. The President therefore "call[ed] on Congress to extend the eviction moratorium" instead. *Id.*

After a bill to extend the moratorium failed to pass the House of Representatives, the moratorium's congressional supporters mounted a

pressure campaign aimed at the White House, including a sit-in on the steps of the U.S. Capitol. *See Protecting Renters from Evictions Act of 2021*, H.R. 4791, 117th Cong. (2021). One Member of Congress publicly urged executive-branch officials to extend the moratorium, asking "Who is going to stop them?" @RepMaxineWaters, Twitter (Aug. 2, 2021, 4:19 PM), https://bit.ly/2VhjaIA. And in response to the President's observation that his "hands were legally tied by [the] recent Supreme Court ruling," the Speaker of the House told his aides to " '[g]et better lawyers[.]' " Michael D. Shear et al., *As Democrats Seethed, White House Struggled to Contain Eviction Fallout*, N.Y. Times (Aug. 7, 2021), https://nyti.ms/3jV5xaj.

The White House nevertheless stood firm over the next few days. After allowing the moratorium to expire, it reiterated on August 2 that "the Supreme Court declared on June 29th that the CDC could not grant such an extension without clear and specific congressional authorization." The White House, *Press Briefing by Press Secretary Jen Psaki and White House American Rescue Plan Coordinator and Senior Advisor to the President Gene Sperling* (Aug. 2, 2021), https://bit.ly/3xoNzBt. It explained that the President had even "asked the CDC to look at whether you could even do targeted eviction moratorium—that just went to the counties that have higher rates"—but that

the agency had "been unable to find the legal authority for even new, targeted eviction moratoriums." *Id.*; *see id.* ("To date, the CDC Director and her team have been unable to find legal authority, even for a more targeted eviction moratorium that would focus just on counties with higher rates of COVID spread.").

On August 3, the White House again confirmed that "the Supreme Court … made clear" that when it came to an eviction moratorium, "any further action would need legislative steps." The White House, *Press Briefing by Press Secretary Jen Psaki* (Aug. 3, 2021), https://bit.ly/2WX9vY0. "[A]s a result" of the Supreme Court's ruling, the White House confirmed, the CDC's "third extension of the moratorium … would be the last." *Id.*

**5.** On the evening of August 3, the CDC announced its fourth extension of the eviction moratorium. 86 Fed. Reg. 43,244 (Aug. 6, 2021). The latest iteration is virtually identical to its predecessors except that its scope is now limited to those counties "experiencing substantial or high rates of transmission" of COVID-19, which as of August 1, amounted to "over 80% of" all counties in the country. *Id.* at 43,244, 43,246. According to the President, the fourth extension of the moratorium "covers close to 90 percent of … renters" in the country. Remarks, *supra.*

In discussing the latest extension, the President acknowledged that the Supreme Court "has already ruled on the present eviction moratorium" and "made it clear that" it "wouldn't stand." *Id.* And he observed that with respect to any further "executive action" in this area, "[t]he bulk of the constitutional scholarship says that it's not likely to pass constitutional muster." *Id.* "But," the President explained, "by the time it gets litigated, it will probably give some additional time while we're getting that $45 billion out." *Id.*

A few days later, the President again acknowledged that when it came to extending the moratorium, "the Supreme Court said, 'You can't do that.'" The White House, *Remarks by President Biden on Strengthening American Leadership on Clean Cars and Trucks* (Aug. 5, 2021), https://bit.ly/3juwwZS. The President explained that he nevertheless "went ahead and did it," because "at least we'll have the ability, if we have to appeal, to keep this going for a month at least—I hope longer than that. And in the process, by that time, we'll get a lot of (inaudible)." *Id.*

**6.** Plaintiffs immediately moved to vacate the district court's stay pending appeal. In denying their motion, the district court agreed that its vacatur order covered the latest iteration of the moratorium, noting that "[t]he government conceded this point." App.62a; *see* App.60a-63a. The court also

made clear that "absent" this Court's earlier stay order, "it would vacate the stay." App.68a. As the district court observed, "the Supreme Court's recent decision in this case strongly suggests that the CDC is unlikely to succeed on the merits" and "[o]ther decisions from the federal courts of appeals further suggest that the government is unlikely to prevail." App.66a-67a. The district court also determined that the government had failed to show that "the equities cut strongly in its favor," noting that since it had issued its stay order, "the government has had three months to distribute rental assistance; health care providers have administered roughly 65 million additional vaccine doses; and the total cost of the moratoria to lessors, amounting to as much as $19 billion each month, has only increased." App.68a n.3 (internal citation omitted). Meanwhile, the court observed, the government has failed to "identif[y] any approach for evaluating when the compounding costs of the federal moratorium will outweigh its residual benefits." *Id.*

The district court nevertheless declined to vacate the stay because it believed its "hands [were] tied" under the law-of-the-case doctrine. App.68a; *see* App.63a-69a. According to the court, the motions panel's unpublished order compelled it "to maintain the stay as a matter of law." App.64a.

ARGUMENT

A stay may remain in place only when the stay applicant (here, the government) has (1) made "a strong showing that [it] is likely to succeed on the merits" as well as has established that (2) it "will be irreparably injured absent a stay," (3) that a stay will not "substantially injure the other parties interested in the proceeding," and (4) that "the public interest" favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted); *see Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014) (vacating stay issued "before … relevant factual and legal developments" because applicant could "no longer meet the test for the grant or continuation of a stay"). The government has not shown that any of these factors weigh in favor of a stay, much less all four of them, and the law-of-the-case doctrine does not excuse its failure to do so.

## I. The Government Has Not Met The Criteria For A Stay Pending Appeal.

### A. The Government Is Unlikely To Succeed On The Merits.

1. As the district court observed, the Supreme Court's ruling "strongly suggests that the CDC is unlikely to succeed on the merits." App.66a. Four Justices agreed to vacate the stay outright, "an action which would have been improbable if not impossible had" plaintiffs "not made a strong showing that [they were] likely to succeed on the merits." *CASA de*

*Maryland, Inc. v. Trump*, 971 F.3d 220, 229 (4th Cir.) (Wilkinson, J.) (cleaned up), *reh'g en banc granted*, 981 F.3d 311 (4th Cir. 2020). And although Justice Kavanaugh chose to vote "at this time" not to vacate the stay based on a "balance of equities," he made clear that the CDC "exceeded its existing statutory authority by issuing a nationwide eviction moratorium." App.56a.

To conclude that the government is likely to succeed on the merits when "five Justices necessarily" thought otherwise would deny "the Supreme Court action its obvious and relevant import." *CASA*, 971 F.3d at 230. Confirming the point, every federal appellate judge to have considered the question since the Supreme Court's order has either concluded or strongly suggested that the CDC exceeded its statutory authority. *See* App.67a-68a (collecting cases).

**2.** That a majority of the Supreme Court thought the moratorium unlawful is understandable. Throughout this litigation, the government has taken the sweeping position that the first sentence of 42 U.S.C. § 264(a) grants the CDC "broad authority" to adopt any and all "regulations that are in its judgment necessary to prevent" the spread of disease, including but not limited to the federal criminalization of evictions. S. Ct. Opp. 24 (cleaned up). There are at least four problems with that reading.

First, it renders the rest of § 264 superfluous. Although the first sentence of § 264(a) authorizes the CDC "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases," 42 U.S.C. § 264(a), the statute goes on to devote over 330 words in over three subsections to spelling out the agency's power to adopt specific quarantine and inspection measures, *see id.* § 264(b)-(d). "If the first sentence" of § 264(a) truly gave the CDC "plenary authority to impose any regulation [it] thought 'necessary to prevent the introduction, transmission, or spread of communicable diseases,' there would be no need to specifically authorize the apprehension and detention of infected individuals in § 264(d), or the inspection and fumigation of contaminated properties in" the second sentence of § 264(a). *Tiger Lily, LLC v. HUD*, --- F.4th ---, 2021 WL 3121373, at *3 (6th Cir. July 23, 2021).

Second, as Justice Kavanaugh's citation to *Utility Air*, 573 U.S. at 324, in his concurring opinion confirms, App.56a, the moratorium cannot be reconciled with the major-questions doctrine, including the rule that "[i]n order for an executive or independent agency to exercise regulatory authority over a major policy question of great economic and political importance, Congress must … expressly and specifically delegate to the agency the

authority both to decide the major policy question and to regulate and enforce." *Paul v. United States*, 140 S. Ct. 342 (2019) (statement of Kavanaugh, J., respecting the denial of certiorari) (collecting cases); *see Tiger Lily*, 2021 WL 3121373, at *3. Nothing in § 264(a) contains an express and specific delegation of authority to the CDC to criminalize evictions, much less to resolve the host of major questions the agency's breathtaking view of its authority would encompass.

Third, the CDC's interpretation is at odds with the federalism clear-statement rule, which provides that when an "administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power"—such as the regulation of the landlord-tenant relationship—there must be "a clear indication that Congress intended that result." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172-73 (2001); *see Tiger Lily*, 2021 WL 3121373, at *4. And § 264's first sentence no more qualifies as a "clear indication" of that intent than the "extremely broad[]" definition of "[c]hemical weapon" in *Bond v. United States*, 572 U.S. 844, 860 (2014).

Fourth, the CDC's interpretation renders § 264(a) an unconstitutional delegation of legislative power. Under the agency's view of its authority, "the

CDC can do anything it can conceive of to prevent the spread of disease," thereby "grant[ing] the CDC director near-dictatorial power for the duration of the pandemic, with authority to shut down entire industries as freely as she could ban evictions." *Tiger Lily*, 2021 WL 3121373, at *4. Indeed, the CDC's domain would not be limited to pandemics, as § 264(a) empowers the agency to respond to *any* "communicable diseases"—common cold included. 42 U.S.C. § 264(a); *see* 81 Fed. Reg. 54,230, 54,233 (Aug. 15, 2016). And rather than offer any framework, standards, or guidance courts are to apply in reviewing the CDC's determinations, the government has consistently urged courts to defer to the agency's judgments. Thus, under the CDC's reading of § 264(a), both "the degree of agency discretion" and "the scope of the power congressionally conferred" are practically limitless, even though the two should be inversely correlated. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001).

**3.** All of this is true whether the moratorium covers "ninety-one percent" of U.S. counties or a hundred. App.61a (discussing reach of moratorium as of August 13). Just as no court would take seriously an attempt by President Truman to nationalize "only" 91% of the Nation's steel mills in the wake of *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or an attempt by the FDA to regulate "only" 91% of tobacco products following

16

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), this Court should not give any credence to a suggestion that the merits here turn on the moratorium's scope.

**B.    The Government Cannot Show That The Equities Justify A Stay.**

Merits aside, the government is not entitled to a stay due to its failure to satisfy any of the equitable factors.

1.    To start, the government has failed to show that a stay will not "substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434 (citation omitted). Aside from having their property unlawfully occupied for almost a year now, *cf. Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), the nation's landlords have been losing "as much as $19 billion each month" since the moratorium was adopted last September. App.68a n.3. Even by the CDC's conservative estimates, its latest extension of the moratorium for the next two months alone will have an impact of at least a $100 million. 86 Fed. Reg. at 43,252; *see* 5 U.S.C. § 804(2).

Making matters worse, these significant losses are unrecoverable (and hence irreparable) given the government's sovereign immunity. And while tenants covered by the moratorium may be *legally* obligated to repay close to a year of back rent, they must be *functionally* judgment-proof to qualify for its

protections in the first place, making them no different than the sovereign when it comes to their ability to redress applicants' injuries. As for federal rental assistance, even as late as July 21, "just $3 billion out of $46 billion had been deployed by the states and cities that got the money," Shear, *supra*, and neither the individual landlords here nor their companies have received any federal rental assistance to date, notwithstanding their efforts to obtain it. *Cf. Chrysafis v. Marks*, No. 21A8, 2021 WL 3560766, at *2 (U.S. Aug. 12, 2021) (Breyer, J., dissenting from grant of application for injunctive relief) (objecting to decision to enjoin part of New York's eviction moratorium because it "does not preclude [landlords] from seeking unpaid rent … in a common-law action" and because "New York is currently distributing more than $2 billion in aid that can be used in part to pay back rent").

**2.** Nor has the government established that a stay would be in the public interest. Because there is "no public interest in the perpetuation of unlawful agency action," the government's ability to meet this factor rises and falls with the merits. *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (citation omitted).

Even setting this basic point aside, the government's insistence that the moratorium remains necessary for public health is pretextual. Today, over

59% of the country's eligible population is fully vaccinated and the average daily death rate has dropped by 40% from where it was when the agency first adopted the moratorium at the start of last September. *See* CDC, *COVID Data Tracker: COVID-19 Vaccinations in the United States*, https://bit.ly/3s0DklV (last updated Aug. 13, 2021); CDC, *COVID Data Tracker: Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory*, https://bit.ly/3xGXEKp (last updated August 12, 2021); *cf.* 86 Fed. Reg. at 16,736 (defending the March 2021 extension on the ground that "the number of deaths per day continues at levels comparable to or higher than when this Order was established in September 2020"). As for the Delta variant, the CDC was well aware of that strain—including its greater "transmissibility," the "increase[]" in the number of cases, and its "more severe" nature—when it issued the third extension in June. 86 Fed. Reg. at 34,012. Yet despite acknowledging these risks, the CDC announced that its "30-day extension" until July 31 was "intended to be the final iteration" of the moratorium. *Id.* at 34,015. And when July 31 finally came, the agency permitted the moratorium to expire. It reversed course three days later not because of an unexpected public-health emergency, but because the political pressure on the White House evidently became too much to bear.

Indeed, as the President himself has acknowledged, the CDC's latest extension is little more than a delay tactic designed to buy time to distribute rental assistance. The President forthrightly explained that even though this extension was "not likely to pass constitutional muster," "by the time it gets litigated, it will probably give some additional time while we're getting that $45 billion out." Remarks, *supra*. That development alone means the public interest overwhelmingly supports lifting the stay, for if the Executive Branch is allowed to engage in such conduct with impunity, the rule of law—and hence the public—will suffer, both now and in the future.

## II. The Law-of-the-Case Doctrine Has No Preclusive Effect Here.

Despite agreeing that the stay should be vacated, the district court believed itself bound by this Court's order under the law-of-the-case doctrine. App.63a-69a. But that doctrine—which "directs a court's discretion" rather than "limit the tribunal's power," *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1491 n.1 (2019) (citation omitted)—has no application here.

"A court must affirmatively decide an issue to establish law of the case." *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012) (cleaned up). While the district court believed that this Court's earlier order had affirmatively decided the issues raised by plaintiffs' request to lift the stay, App.64a-65a, that is

incorrect. The only thing this Court affirmatively decided in its earlier order was that "[t]he district court did not abuse its discretion in *granting* a stay in this case" last May. App.49a (emphasis added). Nothing about that decision foreclosed the district court from exercising its discretion to *vacate* that stay after the Supreme Court issued its ruling, the CDC issued a fourth extension of the moratorium, and the President acknowledged that this latest iteration would buy time to get more rental assistance out the door. If the law were otherwise, the district court would be unable to vacate its stay even if 100 percent of the population were vaccinated and the CDC announced that it was maintaining its moratorium as a matter of economic policy.

Here, the district court likewise remained free to exercise its discretion differently. As this Court has explained, "[a]n order denying preliminary relief ... 'does not constitute the law of the case.' " *Belbacha v. Bush*, 520 F.3d 452, 458 (D.C. Cir. 2008). Not only must an appellate court "often consider such preliminary relief ... on briefing and argument abbreviated or eliminated by time considerations," if the court "predicts, without making a definitive legal conclusion, that the plaintiffs *probably* or *likely* will or will not succeed on the merits, it cannot be said that the court 'affirmatively decided' the issue." *Sherley*, 689 F.3d at 782. While the district court did not dispute that this

Court's earlier ruling qualified as an "order denying preliminary relief," *Belbacha*, 520 F.3d at 458, it concluded that the ruling was "binding on further requests for emergency relief," App.66a. It offered no authority for that distinction, relying instead on the specter of a district court "reissu[ing] an identical stay" immediately after an appellate court vacated it. *Id.* The remedy for that situation, however, is not an expansive application of the law-of-the-case doctrine, but a prompt request to the appellate court to again vacate the stay.

In any event, that is a far cry from the situation here. Rather than return to the district court immediately after this Court's ruling, plaintiffs sought to vacate the stay due to significantly changed circumstances. To start, the Supreme Court's ruling at least freed the district court to consider the matter afresh. No one thinks that if the Supreme Court had *vacated* the stay in June and the CDC then issued a fourth extension, this Court's earlier stay order would have bound the district court under the law-of-the-case doctrine.

The district court nevertheless thought that it had to defer to this Court's earlier ruling rather than a majority of the Justices because "[t]he Supreme Court did not issue a controlling opinion." App.68a. But that is a distinction without a difference. Even a Supreme Court order vacating the

stay would not have "technical[ly]" bound the district court, *CASA*, 971 F.3d at 230, but no one contends that such a ruling should be ignored.  Indeed, this Court has long held that "carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative," *Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) (Kavanaugh, J.) (citation omitted)—even though such dicta is by definition not "a controlling opinion."  App.68a.  It has even concluded that an agency's "authoritative (and reasonable) interpretation" of a regulation could justify "an exception to law-of-the-case doctrine" as "an intervening interpretation of the law."  *NTEU v. FLRA*, 30 F.3d 1510, 1516 (D.C. Cir. 1994).  And one of this Court's sister circuits has determined that "the Supreme Court's decisions … to deny certiorari" may constitute "legal developments" justifying "dissolution of a stay."  *Latta*, 771 F.3d at 498.  There is no reason why the carefully considered views of a majority of the Supreme Court should be given *less* respect.

That is particularly true here given that adhering to this Court's earlier decision "would work a manifest injustice" in light of the Executive Branch's conduct.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).  As the President has explained, the CDC has issued an order backed by hefty federal criminal penalties that it previously conceded it lacked authority to

adopt merely because "by the time it gets litigated, it will probably give some additional time while we're getting that $45 billion out." Remarks, *supra*. That use of executive power, and the judicial process, alone justifies a vacatur of the stay. As a discretionary rule, the law-of-the-case doctrine should neither permit such conduct nor compel lower courts to resolve a matter contrary to how a majority of the Supreme Court would decide it.

## CONCLUSION

This Court should issue an immediate administrative vacatur of the stay, adopt the expedited briefing schedule agreed to by the parties, *see supra* p. 3, and vacate the stay no later than August 19, 2021.

Dated: August 14, 2021

Respectfully Submitted,

*/s/ Brett A. Shumate*
Brett A. Shumate
Charlotte H. Taylor
Stephen J. Kenny
J. Benjamin Aguiñaga
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
bshumate@jonesday.com
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), this document contains 5,186 words.

2.     This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Expd BT typeface.

*/s/ Brett A. Shumate*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on this 14th day of August 2021, I filed the foregoing brief using this Court's Appellate CM/ECF system, which effected service on all parties.

*/s/ Brett A. Shumate*

# ADDENDUM

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS® *et al.*, <br>      *Plaintiffs-Appellees*, <br>   v. <br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES *et al.*, <br>      *Defendants-Appellants.* | No. 21-5093 |

## CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT

### A.   Parties and Amici

Plaintiffs-Appellees are Alabama Association of REALTORS®; Danny Fordham; Fordham & Associates, LLC; H.E. Cauthen Land and Development, LLC; Georgia Association of REALTORS®; Robert Gilstrap; and Title One Management, LLC.

Defendants-Appellants are U.S. Department of Health and Human Services; Xavier Becerra, in his official capacity as Secretary of Health and Human Services; U.S. Department of Justice; Merrick B. Garland, in his official capacity as Attorney General; Centers for Disease Control and Prevention; Rochelle P. Walensky, in her official capacity as Director of

Centers for Disease Control and Prevention; and Sherri A. Berger, in her official capacity as Acting Chief of Staff for Centers for Disease Control and Prevention.

There were no additional parties and no amici in the district court.

## B. Disclosure Statement

Pursuant to FRAP 26.1 and Circuit Rule 26.1, Plaintiffs-Appellees Alabama Association of REALTORS® and Georgia Association of REALTORS® are trade associations of real-estate professionals organized under section 501(c)(6) of the Internal Revenue Code. Each organization has members affected by the CDC Eviction Moratorium. Plaintiffs-Appellees Fordham & Associates, LLC, H.E. Cauthen Land and Development, LLC, and Title One Management, LLC are corporations that manage properties that are affected by the CDC Eviction Moratorium. None of these Plaintiffs-Appellees has a parent company, and no publicly held company owns 10% or more of any Plaintiff-Appellee's stock.

Dated: August 14, 2021

Respectfully Submitted,

*/s/ Brett A. Shumate*
Brett A. Shumate
Charlotte H. Taylor
Stephen J. Kenny
J. Benjamin Aguiñaga
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
bshumate@jonesday.com

*Counsel for Appellees*

# APPENDIX

# TABLE OF CONTENTS

Page

District Court Docket..............................................................................1a

Defendants' Notice of Appeal in the United States District
    Court for the District of Columbia (May 5, 2021) ..................................15a

Order of the United States District Court for the District of
    Columbia Vacating the Nationwide Eviction Moratorium
    (May 5, 2021)..........................................................................17a

Memorandum Opinion of the United States District Court for
    the District of Columbia Vacating the Nationwide Eviction
    Moratorium (May 5, 2021)..........................................................18a

Order of the United States District Court for the District of
    Columbia Staying Judgment Pending Appeal (May 14, 2021) ..............38a

Memorandum Opinion of the United States District Court for
    the District of Columbia Staying Judgment Pending Appeal
    (May 14, 2021)........................................................................39a

Order of the United States Court of Appeals for the District of
    Columbia Circuit Denying the Motion to Vacate Stay Pending
    Appeal (June 2, 2021)................................................................49a

Order of the Supreme Court of the United States Denying the
    Application to Vacate Stay (June 29, 2021)...............................56a

Memorandum Opinion and Order of the United States District
    Court for the District of Columbia Denying the Emergency
    Motion to Enforce the Supreme Court's Ruling and to Vacate
    the Stay Pending Appeal (Aug. 13, 2021)................................57a

## U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:20–cv–03377–DLF

ALABAMA ASSOCIATION OF REALTORS et al v. UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES et al
Assigned to: Judge Dabney L. Friedrich
 Case in other court:  21–05093
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 11/20/2020
Date Terminated: 05/05/2021
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

| | | |
|---|---|---|
| **ALABAMA ASSOCIATION OF REALTORS** | represented by | **Autumn Hamit Patterson**<br>JONES DAY<br>2727 North Harwood St.<br>Dallas, TX 75201<br>214–220–3939<br>Email: ahpatterson@jonesday.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Charlotte Taylor**<br>JONES DAY<br>51 Louisiana Ave, NW<br>Washington, DC 20001<br>202–879–3872<br>Email: ctaylor@jonesday.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Megan Lacy Owen**<br>JONES DAY<br>51 Louisiana Ave, NW<br>Washington, DC 20001<br>202–879–3404<br>Email: mlacyowen@jonesday.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Brett A. Shumate**<br>JONES DAY<br>51 Louisiana Avenue, NW<br>Washington, DC 20001<br>(202) 879–3855<br>Email: bshumate@jonesday.com<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **DANNY FORDHAM** | represented by | **Autumn Hamit Patterson**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Charlotte Taylor**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Megan Lacy Owen**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Brett A. Shumate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FORDHAM & ASSOCIATES, LLC**    represented by  **Autumn Hamit Patterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charlotte Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Lacy Owen**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett A. Shumate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**H.E. CAUTHEN LAND AND
DEVELOPMENT, LLC**    represented by  **Autumn Hamit Patterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charlotte Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Lacy Owen**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett A. Shumate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GEORGIA ASSOCIATION OF
REALTORS**    represented by  **Autumn Hamit Patterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charlotte Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Lacy Owen**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett A. Shumate**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ROBERT GILSTRAP**                    represented by    **Autumn Hamit Patterson**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Charlotte Taylor**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Megan Lacy Owen**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brett A. Shumate**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**TITLE ONE MANAGEMENT, LLC**          represented by    **Autumn Hamit Patterson**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Charlotte Taylor**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Megan Lacy Owen**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Brett A. Shumate**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES DEPARTMENT OF**        represented by    **Brian D. Netter**
**HEALTH AND HUMAN SERVICES**                             U.S. DEPARTMENT OF JUSTICE
                                                          950 Pennsylvania Ave NW
                                                          Washington, DC 20530
                                                          202–514–2000
                                                          Email: Brian.Netter@usdoj.gov
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Leslie Cooper Vigen**
                                                          U.S. DEPARTMENT OF JUSTICE
                                                          Civil Division, Federal Programs Branch
                                                          1100 L Street, NW
                                                          Room 11308
                                                          Washington, DC 20005
                                                          (202) 305–0727
                                                          Fax: (202) 616–8470
                                                          Email: leslie.vigen@usdoj.gov
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Steven A. Myers**
                                                          United States Department of Justice

Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
(202) 305–8648
Fax: (202) 616–8470
Email: steven.a.myers@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
U.S. DEPARTMENT OF JUSTICE
1100 L Street NW
Washington, DC 20005
202–616–8489
Email: john.j.robinson@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALEX M. AZAR, II**
*in his official capacity as Secretary of Health and Human Services*

represented by   **Brian D. Netter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper Vigen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES DEPARTMENT OF JUSTICE**

represented by   **Brian D. Netter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper Vigen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**WILLIAM P. BARR**
*in his official capacity as Attorney General*

represented by   **Brian D. Netter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper Vigen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CENTERS FOR DISEASE CONTROL AND PREVENTION**     represented by     **Brian D. Netter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper Vigen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT R. REDFIELD**
*in his official capacity as Director of the Centers for Disease Control and Prevention*     represented by     **Brian D. Netter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper Vigen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**NINA B WITKOFSKY**
*in her official capacity as Acting Chief of Staff, Centers for Disease Control and Prevention*     represented by     **Brian D. Netter**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper Vigen**
(See above for address)
*LEAD ATTORNEY*

ATTORNEY TO BE NOTICED

**Steven A. Myers**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**THIRD AMENDMENT LAWYERS ASSOCIATION**     represented by     **Jay Marshall Wolman**
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street
14th Floor
Hartford, CT 06103
(702) 420–2001
Fax: (305) 437–7662
Email: jmw@randazza.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/20/2020 | 1 | COMPLAINT against All Plaintiffs *against All Defendants* ( Filing fee $ 400 receipt number ADCDC–7861856) filed by ROBERT GILSTRAP, FORDHAM & ASSOCIATES, LLC, TITLE ONE MANAGEMENT, LLC, DANNY FORDHAM, ALABAMA ASSOCIATION OF REALTORS, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, GEORGIA ASSOCIATION OF REALTORS. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons)(Shumate, Brett) (Entered: 11/20/2020) |
| 11/20/2020 | 2 | NOTICE OF RELATED CASE by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. Case related to Case No. 1:20–cv–3702–WMR (N.D. Ga.); 2:20–cv–02692–MSN–atc (W.D. Tenn.); 6:20–cv–00564 (E.D. Tex.); 5:20–cv–02407–JRA (N.D. Ohio). (Shumate, Brett) (Entered: 11/20/2020) |
| 11/20/2020 | 3 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by FORDHAM & ASSOCIATES, LLC (Shumate, Brett) (Entered: 11/20/2020) |
| 11/20/2020 | 4 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by H.E. CAUTHEN LAND AND DEVELOPMENT, LLC (Shumate, Brett) (Entered: 11/20/2020) |
| 11/20/2020 | 5 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by TITLE ONE MANAGEMENT, LLC (Shumate, Brett) (Entered: 11/20/2020) |
| 11/20/2020 | 6 | MOTION for Summary Judgment *(Expedited)* by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Memorandum in Support, # 2 Declaration Fordham Declaration, # 3 Declaration Gilstrap Declaration, # 4 Declaration Cororaton Declaration, # 5 Declaration Walker Declaration, # 6 Declaration Junkin Declaration, # 7 Proposed Order)(Shumate, Brett) (Entered: 11/20/2020) |
| 11/20/2020 | 7 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Megan Lacy Owen, Filing fee $ 100, receipt number ADCDC–7862927. Fee Status: Fee Paid. by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Declaration of Megan Lacy Owen, # 2 Proposed Order)(Shumate, Brett) (Entered: 11/20/2020) |
| 11/20/2020 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Autumn Hamit Patterson, Filing fee $ 100, receipt number ADCDC–7862993. Fee Status: Fee Paid. by ALABAMA ASSOCIATION |

| | | |
|---|---|---|
| | | OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Declaration of Autumn Hamit Patterson, # 2 Proposed Order)(Shumate, Brett) (Entered: 11/20/2020) |
| 11/23/2020 | | Case Assigned to Judge Dabney L. Friedrich. (zsb) (Entered: 11/23/2020) |
| 11/23/2020 | 9 | SUMMONS (7) Issued Electronically as to ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Attachment: # 1 Notice and Consent)(adh, ) (Entered: 11/23/2020) |
| 11/23/2020 | 10 | STANDARD ORDER for Civil Cases. See text for details. Signed by Judge Dabney L. Friedrich on November 23, 2020. (lcdlf2) (Entered: 11/23/2020) |
| 11/23/2020 | | MINUTE ORDER granting the plaintiffs' 7 Motion for Admission Pro Hac Vice of Attorney Megan Lacy Owen. Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). For instructions visit: https://www.dcd.uscourts.gov/sites/dcd/files/NextGEN_Tutorial_for_Registering_for_E−filing.pdf. So Ordered by Judge Dabney L. Friedrich on November 23, 2020. (lcdlf2) (Entered: 11/23/2020) |
| 11/23/2020 | | MINUTE ORDER granting the plaintiffs' 8 Motion for Admission Pro Hac Vice of Attorney Autumn Hamit Patterson. Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). For instructions visit: https://www.dcd.uscourts.gov/sites/dcd/files/NextGEN_Tutorial_for_Registering_for_E−filing.pdf. So Ordered by Judge Dabney L. Friedrich on November 23, 2020. (lcdlf2) (Entered: 11/23/2020) |
| 11/24/2020 | 11 | NOTICE of Appearance by Autumn Hamit Patterson on behalf of All Plaintiffs (Patterson, Autumn) (Main Document 11 replaced on 11/24/2020) (zeg). (Entered: 11/24/2020) |
| 11/24/2020 | 12 | NOTICE of Appearance by Megan Lacy Owen on behalf of All Plaintiffs (Lacy Owen, Megan) (Main Document 12 replaced on 11/24/2020) (zeg). (Main Document 12 replaced on 11/24/2020) (zeg). (Entered: 11/24/2020) |
| 12/03/2020 | 13 | CERTIFICATE OF SERVICE by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC re 6 MOTION for Summary Judgment *(Expedited) Amended Certificate of Service*. (Shumate, Brett) (Entered: 12/03/2020) |
| 12/03/2020 | 14 | NOTICE of Appearance by Leslie Cooper Vigen on behalf of All Defendants (Vigen, Leslie) (Entered: 12/03/2020) |
| 12/03/2020 | 15 | Joint MOTION for Briefing Schedule by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Attachments: # 1 Text of Proposed Order)(Vigen, Leslie) (Entered: 12/03/2020) |
| 12/03/2020 | 16 | NOTICE of Appearance by Steven A. Myers on behalf of All Defendants (Myers, Steven) (Entered: 12/03/2020) |
| 12/04/2020 | | MINUTE ORDER granting the parties' 15 Joint Motion for Briefing Schedule. Accordingly, the defendants shall provide the administrative record to the plaintiffs and file a certified list of its contents on or before December 11, 2020; the defendants shall file their opposition to the plaintiffs' expedited summary judgment motion and their cross−motion for summary judgment on or before December 21, 2020; the plaintiffs shall file any reply in support of their motion and their opposition to the defendants' cross−motion for summary judgment on or before December 28, 2020; and the defendants shall file any reply in support of their cross−motion on or before January 6, 2021. It is FURTHER ORDERED that the defendants' obligation to answer shall be deferred to 30 days following resolution of the cross−motions, if the case remains pending. So Ordered by Judge Dabney L. Friedrich on December 4, 2020. (lcdlf2) (Entered: 12/04/2020) |
| 12/04/2020 | 17 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ALEX M. AZAR, II served on 11/30/2020 (Shumate, Brett) (Entered: 12/04/2020) |

| 12/04/2020 | 18 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. WILLIAM P. BARR served on 11/30/2020 (Shumate, Brett) (Entered: 12/04/2020) |
|---|---|---|
| 12/04/2020 | 19 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. CENTERS FOR DISEASE CONTROL AND PREVENTION served on 11/30/2020 (Shumate, Brett) (Entered: 12/04/2020) |
| 12/04/2020 | 20 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF JUSTICE served on 11/30/2020 (Shumate, Brett) (Entered: 12/04/2020) |
| 12/04/2020 | 21 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES served on 11/30/2020 (Shumate, Brett) (Entered: 12/04/2020) |
| 12/04/2020 | 22 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. ROBERT R. REDFIELD served on 11/30/2020 (Shumate, Brett) (Entered: 12/04/2020) |
| 12/04/2020 | 23 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. NINA B WITKOFSKY served on 11/30/2020 (Shumate, Brett) (Entered: 12/04/2020) |
| 12/11/2020 | 24 | NOTICE *of Filing* by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Attachments: # 1 Exhibit Administrative Record Certification & Index)(Vigen, Leslie) (Entered: 12/11/2020) |
| 12/16/2020 | 25 | NOTICE *of Filing* by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY re 24 Notice (Other), (Attachments: # 1 Exhibit Administrative Record Recertification & Updated Index)(Vigen, Leslie) (Entered: 12/16/2020) |
| 12/21/2020 | 26 | MOTION for Summary Judgment by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 12/21/2020) |
| 12/21/2020 | 27 | Memorandum in opposition to re 6 MOTION for Summary Judgment *(Expedited)* filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 12/21/2020) |
| 12/28/2020 | 28 | Memorandum in opposition to re 26 MOTION for Summary Judgment filed by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Shumate, Brett) (Entered: 12/28/2020) |
| 12/28/2020 | 29 | REPLY to opposition to motion re 6 MOTION for Summary Judgment *(Expedited)* filed by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Shumate, Brett) (Entered: 12/28/2020) |
| 12/31/2020 | 30 | NOTICE *of Congressional Action* by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Vigen, Leslie) (Entered: 12/31/2020) |
| 01/06/2021 | 31 | REPLY to opposition to motion re 26 MOTION for Summary Judgment filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Vigen, Leslie) (Entered: 01/06/2021) |

| | | |
|---|---|---|
| 01/06/2021 | 32 | Partial MOTION to Dismiss by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Vigen, Leslie) (Entered: 01/06/2021) |
| 01/07/2021 | 33 | Consent MOTION to Stay by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Text of Proposed Order)(Shumate, Brett) (Entered: 01/07/2021) |
| 01/08/2021 | | MINUTE ORDER. Upon consideration of the plaintiffs' 33 Consent Motion for a Temporary Stay, it is ORDERED that the motion is GRANTED. The plaintiffs' deadline to respond to the defendants' 32 Partial Motion to Dismiss is STAYED. On or before February 8, 2021, the parties shall file a joint status report advising the Court as to how they wish to proceed in this case. So Ordered by Judge Dabney L. Friedrich on January 8, 2021. (lcdlf2) (Entered: 01/08/2021) |
| 01/08/2021 | | Set/Reset Deadlines: Status Report due by 2/8/2021 (zjch) (Entered: 01/08/2021) |
| 01/26/2021 | 34 | NOTICE of Appearance by Charlotte Taylor on behalf of All Plaintiffs (Taylor, Charlotte) (Entered: 01/26/2021) |
| 02/01/2021 | 35 | NOTICE of Extension by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Attachments: # 1 Exhibit January 29, 2021 CDC Order)(Vigen, Leslie) (Entered: 02/01/2021) |
| 02/08/2021 | 36 | Joint STATUS REPORT by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Shumate, Brett) (Entered: 02/08/2021) |
| 02/10/2021 | | MINUTE ORDER. Upon consideration of the parties' 36 Joint Status Report, it is ORDERED that the following schedule shall govern further proceedings: the plaintiffs shall file a response to the defendants' partial motion to dismiss on or before February 15, 2021; the defendants shall file a reply in support of their partial motion to dismiss on or before February 22, 2021; the defendants shall file an updated certified list of the contents of the administrative record on or before February 22, 2021; and the plaintiffs shall file an appendix pursuant to Local Civil Rule 7(n) on or before February 24, 2021. So Ordered by Judge Dabney L. Friedrich on February 10, 2021. (lcdlf2) (Entered: 02/10/2021) |
| 02/10/2021 | | Set/Reset Deadlines: Administrative Record due by 2/22/2021. Appendix due by 2/24/2021. Dispositive Motions due by 2/15/2021. Reply to Dispositive Motions due by 2/22/2021. (zjch) (Entered: 02/10/2021) |
| 02/15/2021 | 37 | Memorandum in opposition to re 32 Partial MOTION to Dismiss filed by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Attachments: # 1 Text of Proposed Order)(Shumate, Brett) (Entered: 02/15/2021) |
| 02/22/2021 | 38 | REPLY to opposition to motion re 32 Partial MOTION to Dismiss filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Vigen, Leslie) (Entered: 02/22/2021) |
| 02/22/2021 | 39 | NOTICE of Filing by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Attachments: # 1 Affidavit Certification of Supplemental Administrative Record, # 2 Supplement Index of Supplemental Administrative Record)(Vigen, Leslie) (Entered: 02/22/2021) |
| 02/24/2021 | 40 | JOINT APPENDIX by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT |

| | | |
|---|---|---|
| | | GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Attachments: # 1 Index of Joint Appendix, # 2 Joint Appendix Part 1, # 3 Joint Appendix Part 2, # 4 Joint Appendix Part 3)(Shumate, Brett) (Entered: 02/24/2021) |
| 02/26/2021 | 41 | NOTICE OF SUPPLEMENTAL AUTHORITY by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Opinion and Order, # 2 Judgment)(Shumate, Brett) (Entered: 02/26/2021) |
| 02/27/2021 | 42 | RESPONSE re 41 NOTICE OF SUPPLEMENTAL AUTHORITY, filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Myers, Steven) (Entered: 02/27/2021) |
| 02/28/2021 | 43 | REPLY re 41 NOTICE OF SUPPLEMENTAL AUTHORITY, filed by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Shumate, Brett) (Entered: 02/28/2021) |
| 03/10/2021 | 44 | NOTICE OF SUPPLEMENTAL AUTHORITY by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Exhibit A)(Shumate, Brett) (Entered: 03/10/2021) |
| 03/12/2021 | 45 | RESPONSE re 44 NOTICE OF SUPPLEMENTAL AUTHORITY, filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Vigen, Leslie) (Entered: 03/12/2021) |
| 03/15/2021 | 46 | REPLY re 44 NOTICE OF SUPPLEMENTAL AUTHORITY, filed by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Shumate, Brett) (Entered: 03/15/2021) |
| 03/15/2021 | 47 | NOTICE OF SUPPLEMENTAL AUTHORITY by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Exhibit A)(Shumate, Brett) (Entered: 03/15/2021) |
| 03/19/2021 | 48 | RESPONSE re 47 NOTICE OF SUPPLEMENTAL AUTHORITY, filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Vigen, Leslie) (Entered: 03/19/2021) |
| 03/22/2021 | 49 | NOTICE of Imminent Extension of Eviction Moratorium by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Shumate, Brett) (Entered: 03/22/2021) |
| 03/29/2021 | 50 | NOTICE of Extension and Supplemental Authority by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Exhibit A – Extension of Eviction Moratorium, # 2 Exhibit B – Sixth Circuit Order)(Shumate, Brett) (Entered: 03/29/2021) |
| 03/31/2021 | 51 | RESPONSE re 50 Notice (Other), of Extension and Supplemental Authority filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, |

| | | |
|---|---|---|
| | | ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Vigen, Leslie) (Entered: 03/31/2021) |
| 04/02/2021 | | NOTICE of Hearing: Motion Hearing set for 4/14/2021 at 2:00 PM via video before Judge Dabney L. Friedrich. (zjch) (Entered: 04/02/2021) |
| 04/07/2021 | 52 | NOTICE of Filing by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Attachments: # 1 Declaration Certification of Second Supplemental Administrative Record, # 2 Supplement Index of Second Supplemental Administrative Record, # 3 Supplement Supplement to Certified Administrative Record)(Vigen, Leslie) (Entered: 04/07/2021) |
| 04/08/2021 | | Set/Reset Hearings: Motion Hearing set for 4/29/2021 at 10:00 AM via video before Judge Dabney L. Friedrich. (zjch) (Entered: 04/08/2021) |
| 04/29/2021 | | Minute Entry for proceedings held before Judge Dabney L. Friedrich: Motion Hearing held on 4/29/2021 re 32 Partial MOTION to Dismiss filed by NINA B WITKOFSKY, CENTERS FOR DISEASE CONTROL AND PREVENTION, WILLIAM P. BARR, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF JUSTICE, ALEX M. AZAR, II, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, 26 MOTION for Summary Judgment filed by NINA B WITKOFSKY, CENTERS FOR DISEASE CONTROL AND PREVENTION, WILLIAM P. BARR, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF JUSTICE, ALEX M. AZAR, II, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES. Court Reporter Sara Wick. (zjch) (Entered: 04/29/2021) |
| 05/05/2021 | 53 | ORDER denying the defendants' 26 Motion for Summary Judgment and 32 Partial Motion to Dismiss, and granting the plaintiffs' 6 Motion for Expedited Summary Judgment. See text for details. The Clerk of Court is directed to close this case. Signed by Judge Dabney L. Friedrich on May 5, 2021. (lcdlf1) (Entered: 05/05/2021) |
| 05/05/2021 | 54 | MEMORANDUM OPINION regarding the plaintiffs' 6 Motion for Expedited Summary Judgment and the defendants' 26 Motion for Summary Judgment and 32 Partial Motion to Dismiss. See text for details. Signed by Judge Dabney L. Friedrich on May 5, 2021. (lcdlf1) (Entered: 05/05/2021) |
| 05/05/2021 | 55 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 54 Memorandum & Opinion, 53 Order on Motion for Summary Judgment,, Order on Motion to Dismiss,,, by WILLIAM P. BARR, ALEX M. AZAR, II, CENTERS FOR DISEASE CONTROL AND PREVENTION, NINA B WITKOFSKY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, ROBERT R. REDFIELD. Fee Status: No Fee Paid. Parties have been notified. (Vigen, Leslie) (Entered: 05/05/2021) |
| 05/05/2021 | 56 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 55 Notice of Appeal to DC Circuit Court,. (eg) (Entered: 05/05/2021) |
| 05/05/2021 | 57 | Emergency MOTION to Stay re 54 Memorandum & Opinion, 53 Order on Motion for Summary Judgment,, Order on Motion to Dismiss,,, (Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay) by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 05/05/2021) |
| 05/05/2021 | | MINUTE ORDER. Before the Court is the defendants' 57 Emergency Motion for a Stay Pending Appeal of this Court's 53 May 5, 2021 Order vacating the national eviction moratorium at 86 Fed. Reg. 16,731. In this emergency motion, the defendants request an immediate administrative stay to give this Court time to consider and rule upon its motion to stay this case pending appeal. Alternatively, the defendants request that the Court stay its 53 May 5, 2021 Order as to all parties except for the plaintiffs. Defs.' Emergency Mot. for a Stay Pending Appeal at 1 n.1, 8–9, Dkt. 57. Although the plaintiffs have not yet filed an opposition to the defendants' motion, which was filed at 6:54 p.m. this evening, the defendants represent that the plaintiffs oppose the motion. Id. at 1 n.1. In order to give the Court time to consider the merits of the defendants' 57 Emergency Motion for a Stay Pending Appeal, and the plaintiffs time to file an opposition to the motion, the Court will grant the defendants' request for a temporary administrative stay. |

| | | |
|---|---|---|
| | | This Minute Order should not be construed in any way as a ruling on the merits of the defendants' motion. The Court notes, however, that, as the Court has explained, see Mem. Op. at 19, Dkt. 54, the law in this Circuit is clear: where a court concludes that an agency has exceeded its statutory authority, as this Court has done here, see Mem. Op. at 17, vacatur of the rule is the proper remedy in this Circuit. See Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs, 145 F.3d 1399, 1409 (D.C. Cir. 1998). Based on this clear authority, courts in this Circuit do not restrict vacatur only to those plaintiffs before the Court. See, e.g., O.A. v. Trump, 404 F. Supp. 3d 109, 152–53 (D.D.C. 2019). Indeed, the government has been unable to point to a single case in which a court in this Circuit has done so. See Mot. Hr'g Rough Tr. at 31. <br><br> Accordingly, it is ORDERED that the Court's 53 May 5, 2021 Order is administratively STAYED. It is further ORDERED that the plaintiffs shall file any opposition to the defendants' motion on or before May 12, 2021, and the defendants shall file any reply within four days of the date the plaintiffs' opposition is filed. So Ordered by Judge Dabney L. Friedrich on May 5, 2021. (lcdlf1) <br><br> (Entered: 05/05/2021) |
| 05/05/2021 | | Set/Reset Deadlines: Responses due by 5/12/2021 (zjch) (Entered: 05/06/2021) |
| 05/05/2021 | | USCA Case Number 21–5093 for 55 Notice of Appeal to DC Circuit Court, filed by NINA B WITKOFSKY, CENTERS FOR DISEASE CONTROL AND PREVENTION, WILLIAM P. BARR, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF JUSTICE, ALEX M. AZAR, II, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES. (eg) (Entered: 05/06/2021) |
| 05/07/2021 | 58 | Memorandum in opposition to re 57 Emergency MOTION to Stay re 54 Memorandum & Opinion, 53 Order on Motion for Summary Judgment,, Order on Motion to Dismiss,,, *(Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay)* filed by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Attachments: # 1 Proposed Order)(Shumate, Brett) (Entered: 05/07/2021) |
| 05/11/2021 | 59 | REPLY to opposition to motion re 57 Emergency MOTION to Stay re 54 Memorandum & Opinion, 53 Order on Motion for Summary Judgment,, Order on Motion to Dismiss,,, *(Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay)* filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Myers, Steven) (Entered: 05/11/2021) |
| 05/14/2021 | 60 | ORDER granting the defendants' 57 Emergency Motion for Stay Pending Appeal. See text for details. Signed by Judge Dabney L. Friedrich on May 14, 2021. (lcdlf1) (Entered: 05/14/2021) |
| 05/14/2021 | 61 | MEMORANDUM OPINION regarding the defendants' 57 Emergency Motion for Stay Pending Appeal. See text for details. Signed by Judge Dabney L. Friedrich on May 14, 2021. (lcdlf1) (Entered: 05/14/2021) |
| 05/17/2021 | 62 | NOTICE by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Shumate, Brett) (Entered: 05/17/2021) |
| 05/17/2021 | 64 | LEAVE TO FILE DENIED– Motion for Joinder This document is unavailable as the Court denied its filing. "Leave to filed DENIED. The Court closed this case on May 5, 2021". Signed by Judge Dabney L. Friedrich on May 17, 2021. (zeg) (Entered: 05/21/2021) |
| 05/19/2021 | 63 | RESPONSE re 62 Notice (Other) filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Myers, Steven) (Entered: 05/19/2021) |
| 05/21/2021 | | NOTICE OF ERROR re 62 Notice (Other); emailed to bshumate@jonesday.com, cc'd 13 associated attorneys –– The PDF file you docketed contained errors: 1. Incorrect header/caption/case number, 2. FYI: All documents must be filed in PROPER PLEADING FORMAT. Letters are not accepted unless leave to file has been granted, (zeg, ) (Entered: 05/21/2021) |

| | | |
|---|---|---|
| 06/14/2021 | 65 | TRANSCRIPT OF MOTIONS HEARING before Judge Dabney L. Friedrich, held on 04/29/2021. Page Numbers: 1–44. Date of Issuance: 06/14/2021. Court Reporter: Sara Wick, telephone number 202–354–3284. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 7/5/2021. Redacted Transcript Deadline set for 7/15/2021. Release of Transcript Restriction set for 9/12/2021.(Wick, Sara) (Entered: 06/14/2021) |
| 08/03/2021 | 66 | NOTICE by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY (Myers, Steven) (Entered: 08/03/2021) |
| 08/04/2021 | 67 | Emergency MOTION to Enforce *the Supreme Court's Ruling and* MOTION to Vacate *the Stay Pending Appeal* by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Attachments: # 1 Text of Proposed Order)(Shumate, Brett). Added MOTION to Vacate on 8/5/2021 (eg). (Entered: 08/04/2021) |
| 08/05/2021 | | MINUTE ORDER. It is ORDERED that the defendants shall file any opposition to the plaintiffs' 67 Emergency Motion before August 6, 2021 at 9:00 a.m. The plaintiffs shall file any reply before August 6, 2021 at 7:00 p.m. So Ordered by Judge Dabney L. Friedrich on August 5, 2021. (lcdlf1) (Entered: 08/05/2021) |
| 08/05/2021 | 68 | NOTICE of Appearance by John Robinson on behalf of All Defendants (Robinson, John) (Entered: 08/05/2021) |
| 08/06/2021 | 69 | Memorandum in opposition to re 67 Emergency MOTION to Enforce *the Supreme Court's Ruling and Vacate the Stay Pending Appeal* MOTION to Vacate filed by ALEX M. AZAR, II, WILLIAM P. BARR, CENTERS FOR DISEASE CONTROL AND PREVENTION, ROBERT R. REDFIELD, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF JUSTICE, NINA B WITKOFSKY. (Attachments: # 1 Text of Proposed Order)(Myers, Steven) (Entered: 08/06/2021) |
| 08/06/2021 | 70 | MOTION Leave to file brief as amicus curiae re 67 Emergency MOTION to Enforce *the Supreme Court's Ruling and Vacate the Stay Pending Appeal* MOTION to Vacate by Third Amendment Lawyers Association. (Attachments: # 1 Exhibit Amicus Brief, # 2 Text of Proposed Order)(Wolman, Jay) (Entered: 08/06/2021) |
| 08/06/2021 | 71 | REPLY to opposition to motion re 67 Emergency MOTION to Enforce *the Supreme Court's Ruling and Vacate the Stay Pending Appeal* MOTION to Vacate filed by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC. (Shumate, Brett) (Entered: 08/06/2021) |
| 08/06/2021 | | MINUTE ORDER scheduling a hearing by videoconference on the plaintiffs' 67 Emergency Motion on August 9, 2021 at 10:00 a.m. So Ordered by Judge Dabney L. Friedrich on August 6, 2021. (lcdlf1) (Entered: 08/06/2021) |
| 08/06/2021 | | NOTICE of Hearing: Motion Hearing set for 8/9/2021 at 10:00 AM via video before Judge Dabney L. Friedrich. (zjch) (Entered: 08/06/2021) |
| 08/06/2021 | 72 | NOTICE of Appearance by Brian D. Netter on behalf of All Defendants (Netter, Brian) (Entered: 08/06/2021) |

| | | |
|---|---|---|
| 08/09/2021 | | Minute Entry for proceedings held before Judge Dabney L. Friedrich: Motion Hearing held on 8/9/2021 re 67 Emergency MOTION to Enforce *the Supreme Court's Ruling and Vacate the Stay Pending Appeal* MOTION to Vacate filed by FORDHAM & ASSOCIATES, LLC, ROBERT GILSTRAP, ALABAMA ASSOCIATION OF REALTORS, TITLE ONE MANAGEMENT, LLC, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, GEORGIA ASSOCIATION OF REALTORS, DANNY FORDHAM. Court Reporter Sara Wick (zjch) (Entered: 08/09/2021) |
| 08/12/2021 | 73 | NOTICE OF SUPPLEMENTAL AUTHORITY by ALABAMA ASSOCIATION OF REALTORS, DANNY FORDHAM, FORDHAM & ASSOCIATES, LLC, GEORGIA ASSOCIATION OF REALTORS, ROBERT GILSTRAP, H.E. CAUTHEN LAND AND DEVELOPMENT, LLC, TITLE ONE MANAGEMENT, LLC (Attachments: # 1 Exhibit A)(Shumate, Brett) (Entered: 08/12/2021) |
| 08/13/2021 | 74 | MEMORANDUM OPINION AND ORDER denying the plaintiffs' 67 Emergency Motion to Enforce the Supreme Court's Ruling and Motion to Vacate the Stay Pending Appeal. See text for details. Signed by Judge Dabney L. Friedrich on August 13, 2021. (lcdlf1) (Entered: 08/13/2021) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>    Defendants. | No. 20-cv-3377 (DLF) |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that all Defendants (United States Department of Health and Human Services; Xavier Becerra, in his official capacity as Secretary of Health and Human Services; United States Department of Justice; Merrick B. Garland, in his official capacity as Attorney General; Centers for Disease Control; Rochelle P. Walensky, in her official capacity as Director, Centers for Disease Control and Prevention; and Sherri A. Berger, in her official capacity as Acting Chief of Staff for Centers for Disease Control and Prevention), hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from this Court's Order of May 5, 2021, along with its Memorandum Opinion of May 5, 2021.

Dated:  May 5, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN
Trial Attorney (DC Bar No. 1019782)

15a

STEVEN A. MYERS
Senior Trial Counsel (NY Bar No. 4823043)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel:  (202) 305-0727
Fax:  (202) 616-8470
E-mail:  leslie.vigen@usdoj.gov

*Counsel for Defendants*

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*,<br><br>        *Plaintiffs*,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>        *Defendants*. | No. 20-cv-3377 (DLF) |

## <u>ORDER</u>

For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** that the defendants' Motion for Summary Judgment, Dkt. 26, and Partial Motion to Dismiss, Dkt. 32, are **DENIED**.  It is further

**ORDERED** that the plaintiffs' Motion for Expedited Summary Judgment, Dkt. 6, is **GRANTED**.  It is further

**ORDERED** that the nationwide eviction moratorium issued by the Centers for Disease Control and Prevention, and currently in effect at 86 Fed. Reg. 16,731, is **VACATED**.

May 5, 2021

*Dabney L. Friedrich*
DABNEY L. FRIEDRICH
United States District Judge

17a

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*, <br><br>      *Plaintiffs*, <br><br>   v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br>      *Defendants.* | No. 20-cv-3377 (DLF) |

## <u>MEMORANDUM OPINION</u>

As part of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020), Congress enacted a 120-day eviction moratorium that applied to rental properties receiving federal assistance, *id.* § 4024(b).  After that moratorium expired, the U.S. Department of Health and Human Services (HHS), through the Centers for Disease Control and Prevention (CDC), issued an order implementing a broader eviction moratorium that applied to all rental properties nationwide, 85 Fed. Reg. 55,292 (Sept. 4, 2020), which prompted this suit.  Since then, Congress has granted a 30-day extension of the CDC Order, and the CDC has extended the order twice itself.  The current order is set to expire on June 30, 2021.

In this action, the plaintiffs raise a number of statutory and constitutional challenges to the CDC Order.  Before the Court is the plaintiffs' Motion for Expedited Summary Judgment, Dkt. 6, as well as the Department's Motion for Summary Judgment, Dkt. 26, and Partial Motion to Dismiss, Dkt. 32.  For the reasons that follow, the Court will grant the plaintiffs' motion and deny the Department's motions.

18a

## I.     BACKGROUND

On March 13, 2020, then-President Trump declared COVID-19 a national emergency.
*See generally* Declaring a National Emergency Concerning the Novel Coronavirus Disease
(COVID-19) Outbreak, Proclamation 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).  Two weeks
later, he signed the CARES Act into law.  *See* Pub. L. No. 116-136, 134 Stat. 281 (2020).  The
CARES Act included a 120-day eviction moratorium with respect to rental properties that
participated in federal assistance programs or were subject to federally-backed loans.  *See id.* §
4024.  In addition, some—but not all—states adopted their own temporary eviction moratoria.
Administrative Record ("AR") at 966–72, 986–1024, Dkt. 40.  The CARES Act's federal
eviction moratorium expired in July 2020.

On August 8, 2020, then-President Trump issued an executive order directing the
Secretary of HHS ("the Secretary") and the Director of the CDC to "consider whether any
measures temporarily halting residential evictions of any tenants for failure to pay rent are
reasonably necessary to prevent the further spread of COVID-19 from one State or possession
into any other State or possession."  Fighting the Spread of COVID-19 by Providing Assistance
to Renters and Homeowners, Executive Order 13,945, 85 Fed. Reg. 49,935, 49,936 (Aug. 8,
2020).

Weeks later, on September 4, 2020, the CDC issued the "Temporary Halt in Residential
Evictions To Prevent the Further Spread of COVID-19" ("CDC Order"), pursuant to § 361 of the
Public Health Service Act, 42 U.S.C. § 264(a), and 42 C.F.R. § 70.2.  85 Fed. Reg. 55,292 (Sept.
4, 2020).  In this order, the CDC determined that a temporary halt on residential evictions was "a
reasonably necessary measure . . . to prevent the further spread of COVID-19."  85 Fed. Reg. at
55,296.  As the CDC explained, the eviction moratorium facilitates self-isolation for individuals

infected with COVID-19 or who are at a higher-risk of severe illness from COVID-19 given their underlying medical conditions.  *Id.* at 55,294.  It also enhances state and local officials' ability to implement stay-at-home orders and other social distancing measures, reduces the need for congregate housing, and helps prevent homelessness.  *Id.* at 55,294.

The CDC Order declared that "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action shall not evict any covered person."  *Id.* at 55,296.  To qualify for protection under the moratorium, a tenant must submit a declaration to their landlord affirming that they: (1) have "used best efforts to obtain all available government assistance for rent or housing"; (2) expect to earn less than $99,000 in annual income in 2020, were not required to report any income in 2019 to the Internal Revenue Service, or received a stimulus check under the CARES Act; (3) are "unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, a lay-off, or extraordinary out-of-pocket medical expenses"; (4) are "using best efforts to make timely partial payments"; (5) would likely become homeless or be forced to move into a shared residence if evicted; (6) understand that rent obligations still apply; and (7) understand that the moratorium is scheduled to end on December 31, 2020.  *Id.* at 55,297.

Unlike the CARES Act's moratorium, which only applied to certain federally backed rental properties, the CDC Order applied to all residential properties nationwide.  *Id.* at 55,293. In addition, the CDC Order includes criminal penalties.  Individuals who violate its provisions are subject to a fine of up to $250,000, one year in jail, or both, and organizations are subject to a fine of up to $500,000.  *Id.* at 55,296.

The CDC Order was originally slated to expire on December 31, 2020.  *Id.* at 55,297.  As part of the Consolidated Appropriations Act, however, Congress extended the CDC Order to

apply through January 31, 2021, Pub. L. No. 116-260, § 502, 134 Stat. 1182 (2020).  On January

29, 2021, the CDC extended the order through March 31, 2021.  Temporary Halt in Residential

Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 8020 (Feb. 3, 2021).  In this

extension, the CDC updated its findings to account for new evidence of how conditions had

worsened since the original order was issued, as well as "[p]reliminary modeling projections and

observational data" from states that lifted eviction moratoria "indicat[ing] that evictions

substantially contribute to COVID-19 transmission."  *Id.* at 8022.  The CDC later extended the

order through June 30, 2021.  Temporary Halt in Residential Evictions to Prevent the Further

Spread of COVID-19, 86 Fed. Reg. 16,731 (Mar. 31, 2021).

### A.  Procedural History

The plaintiffs—Danny Fordham, Robert Gilstrap, the corporate entities they use to

manage rental properties (Fordham & Associates, LLC, H.E. Cauthen Land and Development,

LLC, and Title One Management, LLC), and two trade associations (the Alabama and Georgia

Associations of Realtors)—filed this action on November 20, 2020.  Compl., Dkt. 1.  They

challenge the lawfulness of the eviction moratorium on a number of statutory and constitutional

grounds.  The plaintiffs allege that the eviction moratorium exceeds the CDC's statutory

authority, *id.* ¶¶ 81–84 (Count III), violates the notice-and-comment requirement, *id.* ¶¶ 63–70

(Count I), and is arbitrary and capricious, *id.* ¶¶ 85–91 (Count IV), all in violation of the

Administrative Procedure Act (APA).  The plaintiffs further allege that the eviction moratorium

fails to comply with the Regulatory Flexibility Act.  *Id.* ¶¶ 71–78 (Count II).  To the extent that

the Public Health Service Act authorizes the eviction moratorium, the plaintiffs allege that the

Act is an unconstitutional delegation of legislative power under Article I.  *Id.*  ¶¶ 92–95 (Count

V).  Finally, the plaintiffs allege that the eviction moratorium constitutes an unlawful taking of

property in violation of the Takings Clause, *id.* ¶¶ 96–103 (Count VI), violates the Due Process

Clause, *id.* ¶¶ 96–110 (Count VII), and deprives the plaintiffs of their right of access to courts,

*id.* ¶¶ 111–15 (Count VIII).  The plaintiffs seek declaratory and injunctive relief, attorneys' fees

and costs, and any other relief the Court deems just and proper.  *Id.* ¶¶ 116–20.

Before the Court is the plaintiffs' expedited motion for summary judgment, Dkt. 6, and

the Department's cross-motion for summary judgment.  Also before the Court is the

Department's partial motion to dismiss, Dkt. 32, in which the Department argues that Congress

ratified the CDC Order when it extended the eviction moratorium in the Consolidated

Appropriations Act of 2021.  All three motions are now ripe for review.

### B.  Relevant Decisions

This Court is not the first to address a challenge to the national eviction moratorium set

forth in the CDC Order.  In the last several months, at least six courts have considered various

statutory and constitutional challenges to the CDC Order.  Most recently, the Sixth Circuit

denied a motion to stay a district court decision that held that the order exceeded the CDC's

authority under 42 U.S.C. § 264(a), *see Tiger Lily, LLC v. United States Dep't of Hous. & Urb.

Dev.*, No. 2:20-cv-2692, 2021 WL 1171887, at *4 (W.D. Tenn. Mar. 15, 2021) (concluding that

the CDC Order exceeded the statutory authority of the Public Health Service Act), *appeal filed*

No. 21-5256 (6th Cir. 2021); *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992

F.3d 518, 520 (6th Cir. 2021) (denying emergency motion for stay pending appeal); *see also

Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, No. 5:20-cv-2407, 2021 WL 911720,

at *12 (N.D. Ohio Mar. 10, 2021) (holding that the CDC exceeded its authority under 42 U.S.C.

§ 264(a)).  Two other district courts, however, declined to enjoin the CDC Order at the

preliminary injunction stage, *see Brown v. Azar*, No. 1:20-cv-03702, 2020 WL 6364310, at *9–

11 (N.D. Ga. Oct. 29, 2020), *appeal filed*, No. 20-14210 (11th Cir. 2020); *Chambless Enterprises, LLC v. Redfield*, No. 20-cv-01455, 2020 WL 7588849, at *5–9 (W.D. La. Dec. 22, 2020), *appeal filed*, No. 21-30037 (5th Cir. 2021).  Separately, another district court declared that the federal government lacks the constitutional authority altogether to issue a nationwide moratorium on evictions.  *See Terkel v. Ctrs. for Disease Control & Prevention*, No. 6:20-cv-564, 2021 WL 742877, at *1–2, 10–11 (E.D. Tex. Feb. 25, 2021), *appeal filed*, No. 21-40137 (5th Cir. 2021).

## II.    LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is "material" if it has the potential to change the substantive outcome of the litigation.  *See id.* at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  And a dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

In a case reviewing agency action, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006).  "[T]he entire case . . . is a question of law," and the district court "sits as an appellate tribunal."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks and footnote omitted).

III.    **ANALYSIS**

    **A.  Standing**

Article III of the Constitution limits the "judicial Power" of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "[T]here is no justiciable case or controversy unless the plaintiff has standing."  *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017).  To establish standing, a plaintiff must demonstrate a concrete injury-in-fact that is fairly traceable to the defendant's action and redressable by a favorable judicial decision.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Since the CDC Order went into effect, the three real estate management company plaintiffs have each had tenants who have stopped paying rent, invoked the protections of the eviction moratorium, and would be subject to eviction but for the CDC Order.  *See* Decl. of Danny Fordham ¶¶ 2–5, 9–17, Dkt. 6-2; Decl. of Robert Gilstrap ¶¶ 2, 4–12, Dkt. 6-3.  At a minimum, these three plaintiffs have established a concrete injury that is traceable to the CDC Order and is redressable by a decision vacating the CDC Order.  *See Summers*, 555 U.S. at 493. "[I]t is immaterial that other plaintiffs might be unable to demonstrate their own standing," *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019), because "Article III's case-or-controversy requirement is satisfied if one plaintiff can establish injury and standing," *id.*

    **B.  The Agency's Statutory Authority**

Section 361 of the Public Health Service Act empowers the Secretary to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases" either internationally or between states.[1]  42

---

[1] "Although the statute states that this authority belongs to the Surgeon General, subsequent reorganizations not relevant here have resulted in the transfer of this responsibility to the Secretary."  *Skyworks*, 2021 WL 911720, at *5.

U.S.C. § 264(a).  "For purposes of carrying out and enforcing such regulations," the Secretary is authorized to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."  *Id.*  The Secretary is also authorized to, within certain limits, make and enforce regulations to apprehend, examine, and, if necessary, detain individuals "believed to be infected with a communicable disease" or who are "coming into a State or possession" from a foreign country.  *Id.* § 264(b)–(d).

By regulation, the Secretary delegated this authority to the Director of the CDC.  42 C.F.R. § 70.2.  Pursuant to this regulation, when the Director of the CDC determines that the measures taken by health authorities of any state or local jurisdiction are insufficient to prevent the spread of communicable disease, "he/she may take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."  *Id.*

In determining whether the eviction moratorium in the CDC Order exceeds the Department's statutory authority, the Department urges the Court to apply the familiar two-step *Chevron* framework.  *See* Defs.' Mot. for Summ. J. ("Def.'s Cross-Mot.") at 8 (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).  While it is true that "the CDC did not follow APA notice-and-comment rulemaking procedures before issuing the Eviction Moratorium," Pl.'s Mem. in Supp. of Expedited Mot. for Summ. J. ("Pl.'s Mem.") at 21, Dkt. 6-1, "*Chevron* deference is not necessarily limited to regulations that are the product of notice-and-comment rulemaking," *Pub. Citizen, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 332

F.3d 654, 660 (D.C. Cir. 2003).  The *Chevron* framework applies where "Congress [has] delegated authority to the agency generally to make rules carrying the force of law" and "the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead*, 533 U.S. 218, 226–27 (2001); *Fox v. Clinton*, 684 F.3d 67, 78 (D.C. Cir. 2012).  Here, the CDC Order was issued pursuant to a broad grant of rulemaking authority, *see* 42 U.S.C. § 264(a) (authorizing the Secretary to "make and enforce" regulations "to prevent the introduction, transmission, or spread of communicable diseases."); 42 C.F.R. § 70.2 (delegating this authority to the Director of the CDC), and was "clearly intended to have general applicability." *Kaufman v. Nielsen*, 896 F.3d 475, 484 (D.C. Cir. 2018).  It was also issued "with a lawmaking pretense in mind," *Mead*, 533 U.S. at 233, published in the Federal Register, *see Citizens Exposing Truth about Casinos v. Kempthorne*, 492 F.3d 460, 467 (D.C. Cir. 2007), and backed with the threat of criminal penalties, 85 Fed. Reg. 55,296.  Because the CDC Order was clearly intended to have the force of law, the two-step *Chevron* framework applies.[2]

    Applying *Chevron* and using the traditional tools of statutory interpretation, a court must first consider at Step One "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  "If Congress has directly spoken to [an] issue, that is the end of the

---

[2] The fact that section 361 of the Public Health Service Act is administered by both the CDC and the FDA, *see* Control of Communicable Diseases; Apprehension and Detention of Persons With Specific Diseases; Transfer of Regulations, 65 Fed. Reg. 49,906, 49,907 (Aug. 16, 2000), does not preclude application of the *Chevron* framework.  While courts "generally do not apply *Chevron* deference when the statute in question is administered by multiple agencies," *Kaufman*, 896 F.3d at 483; *see also, e.g.*, *DeNaples v. Office of Comptroller of Currency*, 706 F.3d 481, 487 (D.C. Cir. 2013), the FDA and the CDC are both sub-agencies within HHS.  Accordingly, "there is nothing special to undermine *Chevron*'s premise that the grant of authority reflected a congressional expectation that courts would defer" to reasonable agency interpretations of the statute, and there is little risk of "conflicting mandates to regulated entities."  *Loan Syndications & Trading Ass'n v. Sec. & Exch. Comm'n*, 882 F.3d 220, 222 (D.C. Cir. 2018) (summarizing instances where "*Chevron* is inapplicable due to the multiplicity of agencies").

matter." *Confederated Tribes of Grand Ronde Cmty. of Or. v. Jewell*, 830 F.3d 552, 558 (D.C. Cir. 2016) (citing *Chevron*, 467 U.S. at 837). "[T]he court, as well [as] the agency, must give effect to the unambiguously expressed intent of Congress." *Lubow v. U.S. Dep't of State*, 783 F.3d 877, 884 (D.C. Cir. 2015) (quoting *Chevron*, 467 U.S. at 842–43). Only if the text is silent or ambiguous does a court proceed to Step Two. There, a court must "determine if the agency's interpretation is permissible, and if so, defer to it." *Confederated Tribes of Grand Ronde Cmty.*, 830 F.3d at 558. To determine "whether [an] agency's interpretation is permissible or instead is foreclosed by the statute," courts use "all the tools of statutory interpretation," *Loving v. IRS*, 742 F.3d 1013, 1016 (D.C. Cir. 2014), and "interpret the words [of a statute] consistent with their ordinary meaning at the time Congress enacted the statute," *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (internal quotation marks and alteration omitted); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012) ("Words must be given the meaning they had when the text was adopted.").

The first question, then, is whether the relevant statutory language addresses the "precise question at issue." *Chevron*, 467 U.S. at 842. As noted, the Public Health Service Act provides, in relevant part:

> The [CDC], with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the [Secretary] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

42 U.S.C. § 264(a). Other subsections of the Act authorize, in certain circumstances, the quarantine of individuals in order to prevent the interstate or international spread of disease. *See id.* § 264(b)–(d). Though the Public Health Service Act grants the Secretary broad authority to

make and enforce regulations necessary to prevent the spread of disease, his authority is not limitless.

Section 264(a) provides the Secretary with general rulemaking authority to "make and enforce *such regulations*," *id.* § 264(a) (emphasis added), that "in his judgment are necessary" to combat the international or interstate spread of communicable disease, *id.* But this broad grant of rulemaking authority in the first sentence of § 264(a) is tethered to—and narrowed by—the second sentence. It states: "For purposes of carrying out and enforcing *such regulations*," *id.* (emphasis added), the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination [and] destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." *Id.*

These enumerated measures are not exhaustive. The Secretary may provide for "other measures, as in his judgment may be necessary." *Id.* But any such "other measures" are "controlled and defined by reference to the enumerated categories before it." *See Tiger Lily*, 992 F.3d at 522–23 (internal quotation marks and alteration omitted); *id.* at 522 (applying the *ejusdem generis* canon to interpret the residual catchall phrase in § 264(a)). These "other measures" must therefore be similar in nature to those listed in § 264(a). *Id.*; *Skyworks*, 2021 WL 911720, at *10. And consequently, like the enumerated measures, these "other measures" are limited in two significant respects: first, they must be directed toward "animals or articles," 42 U.S.C. § 264(a), and second, those "animals or articles" must be "found to be so infected or contaminated as to be sources of dangerous infection to human beings," *id.*; *see Skyworks,* 2021 WL 911720, at *10. In other words, any regulations enacted pursuant to § 264(a) must be directed toward "specific targets 'found' to be sources of infection." *Id.*

The national eviction moratorium satisfies none of these textual limitations.  Plainly, imposing a moratorium on evictions is different in nature than "inspect[ing], fumigat[ing], disinfect[ing], sanit[izing], . . . exterminat[ing] [or] destr[oying]," 42 U.S.C. § 264(a), a potential source of infection.  *See Tiger Lily*, 992 F.3d at 524.  Moreover, interpreting the term "articles" to include evictions would stretch the term beyond its plain meaning.  *See* Webster's New International Dictionary 156 (2d ed. 1945) (defining an "article" as "[a] thing of a particular class or kind" or "a commodity"); *see also Skyworks,* 2021 WL 911720, at *10.  And even if the meaning of the term "articles" could be stretched that far, the statute instructs that they must be "found to be so infected or contaminated as to be sources of dangerous infection to human beings."  42 U.S.C. § 264(a).  The Secretary has made no such findings here.  The fact that individuals with COVID-19 can be asymptomatic and that the disease is difficult to detect, Mot. Hr'g Rough Tr. at 26,[3] does not broaden the Secretary's authority beyond what the plain text of § 264(a) permits.

The Department reads § 264(a) another way.  In the Department's view, the grant of rulemaking authority in § 264(a) is not limited *in any way* by the specific measures enumerated in § 264(a)'s second sentence.  Defs.' Cross-Mot. at 18, 19 n.2.  According to the Department, Congress granted the Secretary the "broad authority to make and enforce" *any* regulations that "in his judgment are necessary to prevent the spread of disease," *id.* at 11 (internal quotation marks omitted), across states or from foreign countries.  In other words, the grant of rulemaking authority in § 264(a)'s first sentence is a congressional deferral to "the 'judgment' of public

---

[3] The official transcript from the motions hearing held on April 29, 2021 is forthcoming, and this opinion will be updated to include citations to that transcript when it becomes available.

health authorities about what measures they deem 'necessary' to prevent contagion." *Id.* at 9 (quoting 42 U.S.C. § 264(a)).

The Department's interpretation goes too far. The first sentence of § 264(a) is the starting point in assessing the scope of the Secretary's delegated authority. But it is not the ending point. While it is true that Congress granted the Secretary broad authority to protect the public health, it also prescribed clear means by which the Secretary could achieve that purpose. *See Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 139 (D.C. Cir. 2006). And those means place concrete limits on the steps the Department can take to prevent the interstate and international spread of disease. *See supra* at 11. To interpret the Act otherwise would ignore its text and structure.

At *Chevron*'s first step, this Court must apply the "ordinary tools of the judicial craft," *Mozilla Corp. v. Fed. Commc'ns Comm'n*, 940 F.3d 1, 20 (D.C. Cir. 2019), including canons of construction, *see ArQule, Inc. v. Kappos*, 793 F. Supp. 2d 214, 219–20 (D.D.C. 2011). These canons confirm what the plain text reveals. The Secretary's authority does not extend as far as the Department contends.

*First*, "[i]t is… a cardinal principle of statutory construction that [courts] must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (internal quotation marks omitted). Applying that principle here, the Department's broad reading of § 264(a)'s first sentence would render the second sentence superfluous. If the first sentence empowered the Secretary to enact *any* regulation that, in his "judgment," was "necessary" to prevent the interstate spread of communicable disease, *id.*, there would be no need for Congress to enumerate the "measures" that the Secretary "may provide for" to carry out and enforce those regulations, *see id.* Though the surplusage canon "is not absolute," *Lamie v.*

*U.S. Tr.*, 540 U.S. 526, 536 (2004); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006), like the plain language, it supports a narrow reading of the statute.

*Second*, the canon of constitutional avoidance instructs that a court shall construe a statute to avoid serious constitutional problems unless such a construction is contrary to the clear intent of Congress. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). An overly expansive reading of the statute that extends a nearly unlimited grant of legislative power to the Secretary would raise serious constitutional concerns, as other courts have found. *See, e.g., Skyworks,* 2021 WL 911720, at *9 (noting that such a reading would raise doubts as to "whether Congress violated the Constitution by granting such a broad delegation of power unbounded by clear limitations or principles."); *Tiger Lily*, 992 F.3d at 523 (same); *id.* ("[W]e cannot read the Public Health Service Act to grant the CDC power to insert itself into the landlord-tenant relationship without some clear, unequivocal textual evidence of Congress's intent to do so"); *Terkel*, 2021 WL 742877, at *4–6 (holding that the CDC's eviction moratorium exceeds the federal government's power under the Commerce Clause. Congress did not express a clear intent to grant the Secretary such sweeping authority.

And *third*, the major questions doctrine is based on the same principle: courts "expect Congress to speak *clearly* if it wishes to assign to an agency decisions of vast 'economic and political significance.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (emphasis added)); *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 959 (D.C. Cir. 2021) (collecting cases). There is no question that the decision to impose a nationwide moratorium on evictions is one "of vast economic and political significance." *Util. Air Regul. Grp.*, 573 U.S. at 324 (internal quotation marks omitted).

Not only does the moratorium have substantial economic effects,[4] eviction moratoria have been the subject of "earnest and profound debate across the country," *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006) (internal quotation marks omitted).  At least forty-three states and the District of Columbia have imposed state-based eviction moratoria at some point during the COVID-19 pandemic, *see* 86 Fed. Reg. 16,731, 16,734, though, as the CDC noted in its most recent extension of the CDC Order, these protections either "have expired or are set to expire in many jurisdictions," *id.* at 16,737 n.35.  Congress itself has twice addressed the moratorium on a nationwide-level—once through the CARES Act, *see* Pub. L. No. 116-136, § 4024, 134 Stat. 281 (2020), and again through the Consolidated Appropriations Act, *see* Pub. L. No. 116-260, § 502, 134 Stat. 1182 (2020).

Accepting the Department's expansive interpretation of the Act would mean that Congress delegated to the Secretary the authority to resolve not only this important question, but endless others that are also subject to "earnest and profound debate across the country." *Gonzales*, 546 U.S. at 267 (internal quotation marks omitted).  Under its reading, so long as the Secretary can make a determination that a given measure is "necessary" to combat the interstate or international spread of disease, there is no limit to the reach of his authority.[5]

---

[4] In their briefing, the parties dispute the economic impact of the CDC order, *see, e.g.*, Pl.'s Mem. at 2 (estimating the nation's landlords will suffer "$55-76 billion" in losses as a consequence of the initial moratorium); Def.'s Cross-Mot. at 15 n.4 (disputing these figures). Regardless, the economic impact of the CDC Order is substantial.  Indeed, the CDC itself estimates that "as many as 30-40 million people in America could be at risk of eviction" absent the CDC's moratorium as well as other State and local protections, 85 Fed. Reg. at 55,294–95. The CDC Order also qualifies as "a major rule under the Congressional Review Act," *id.* at 55,296, which means it is expected to have "an annual effect on the economy of $100,000,000 or more," 5 U.S.C. § 804(2).

[5] The only other potential limitation, imposed by regulation, is that the Director of the CDC would need to conclude that state and local health authorities have not taken sufficient measures to prevent the spread of communicable disease.  *See* 42 C.F.R. § 70.2.

"Congress could not have intended to delegate" such extraordinary power "to an agency in so cryptic a fashion." *Brown & Williamson Tobacco Corp.*, 529 U.S. at 159.  To be sure, COVID-19 is a novel disease that poses unique and substantial public health challenges, *see* Def.'s Cross-Mot. at 14, but the Court is "confident that the enacting Congress did not intend to grow such a large elephant in such a small mousehole."  *Loving.*, 742 F.3d at 1021; *see also Brown & Williamson,* 529 U.S. at 160.

It is also telling that the CDC has never used § 264(a) in this manner.  As the Department confirms, § 264(a) "has never been used to implement a temporary eviction moratorium," and "has rarely [been] utilized . . . for disease-control purposes."  *See* Defs.' Cross-Mot. at 13–15, 23.  "When an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy," the Court must "greet its announcement with a measure of skepticism."  *Util. Air Regul. Grp.*, 573 U.S. at 324 (internal quotation marks omitted).

The Department advances one final counterargument.  It notes that subsequent subsections of the statute, § 264(b)–(d), contemplate that the Secretary may, under certain carefully prescribed circumstances, provide for the "apprehension, detention, or conditional release of individuals" who are arriving in the United States from abroad or who are "reasonably believed to be infected with a communicable disease," 42 U.S.C. § 264(b)–(d).  And it stresses that enforced quarantines are not listed in—and are different in kind from—the measures enumerated in § 264(a).  Defs.' Cross-Mot. at 10–11.  Accordingly, the Department contends that the presence of these subsequent subsections demonstrates that the list of means in the second sentence of § 264(a) imposes *no* limits on the Secretary's authority under § 264(a).  *Id.*

This argument is not persuasive.  No doubt, Congress intended to give the Secretary—and, by extension, health experts in the CDC—the discretion and flexibility to thwart the spread of disease.  But the quarantine provisions in § 264(b)–(d) are structurally separate from those in § 264(a).  *Tiger Lily*, 992 F.3d at 524 (noting that the provisions in § 264(b)–(d) restrict individual liberty interests, while § 264(a) is concerned exclusively with property interests).  And regardless, like the enumerated measures in § 264(a), the quarantine provisions are cabined and directed toward individuals who are either entering the United States or "reasonably believed to be infected," 42 U.S.C. § 264(c)–(d), and "not to amorphous disease spread" more generally, *Skyworks*, 2021 WL 911720, at *10.  The quarantine provisions in § 264(b)–(d) therefore do not provide support for the eviction moratorium.

In sum, the Public Health Service Act authorizes the Department to combat the spread of disease through a range of measures, but these measures plainly do not encompass the nationwide eviction moratorium set forth in the CDC Order.[6]  Thus, the Department has exceeded the authority provided in § 361 of the Public Health Service Act, 42 U.S.C. § 264(a).

### C.  Ratification of the CDC Order

In its partial motion to dismiss, the Department argues that Congress ratified the agency's action when it extended the moratorium in the Consolidated Appropriations Act.[7]  *See* Defs.' Partial Mot. at 7–9.  The initial CDC Order was set to expire on December 31, 2020, *see* 85 Fed.

---

[6] Because the CDC Order exceeds the Secretary's authority, the Court need not address the plaintiffs' remaining challenges to the eviction moratorium.

[7] The Department initially argued in its partial motion to dismiss that Counts I-V of the complaint were moot in light of Congress's extension of the CDC Order.  Defs.' Mem. in Supp. of Partial Mot. to Dismiss ("Defs.' Partial Mot.") at 1, Dkt. 32-1.  But this congressional extension of the CDC Order has since expired, so the Department has withdrawn this argument. *See* Joint Status Report at 2, Dkt. 36.

Reg. at 55,297, but Congress extended the expiration date until January 31, 2021, by including §

502 in the Consolidated Appropriations Act.  Section 502 provided:

> The order issued by the Centers for Disease Control and Prevention under section 361
> of the Public Health Service Act (42 U.S.C. 264), entitled ''Temporary Halt in
> Residential Evictions To Prevent the Further Spread of COVID–19'' (85 Fed. Reg.
> 55292 (September 4, 2020) is extended through January 31, 2021, notwithstanding the
> effective dates specified in such Order.

Pub. L. No. 116-260, § 502, 134 Stat. 1182 (2020).

"Congress 'has the power to ratify the acts which it might have authorized' in the first

place," *Thomas v. Network Sols., Inc.*, 176 F.3d 500, 506 (D.C. Cir. 1999) (quoting *United States

v. Heinszen & Co.*, 206 U.S. 370, 384 (1907)), "and give the force of law to official action

unauthorized when taken," *Swayne & Hoyt v. United States*, 300 U.S. 297, 301–02 (1937).  To

do so, however, Congress must make its intention explicit.  *Heinszen*, 206 U.S. at 390.

Congress did not do so here.  When Congress granted a temporary extension of the

eviction moratorium by enacting § 502, it acknowledged that the CDC issued its order pursuant

to the Public Health Service Act.  It did not, however, expressly approve of the agency's

interpretation of 42 U.S.C. § 264(a) or provide the agency with any additional statutory

authority.  *See Tiger Lily*, 992 F.3d at 524; *Skyworks,* 2021 WL 911720, at *12.  Instead,

Congress merely extended the CDC Order for a limited 30-day duration.

"[C]ongressional acquiescence to administrative interpretations of a statute" is

"recognize[d]. . . with extreme care."  *See Solid Waste Agency of N. Cook Cty. v. U.S. Army

Corps of Eng'rs*, 531 U.S. 159, 160 (2001).  "[M]ere congressional acquiescence in the CDC's

assertion that the [CDC Order] was supported by 42 U.S.C. § 264(a) does not make it so."  *Tiger

Lily*, 992 F.3d at 524.  Because Congress withdrew its support for the CDC Order on January 31,

2021, the order now stands—and falls—on the text of the Public Health Service Act alone.  For

all the reasons stated above, *supra* Part III.B., the national eviction moratorium in the CDC Order is unambiguously foreclosed by the plain language of the Public Health Service Act.

### D.  Remedy

Both parties agree that if the Court concludes that the Secretary exceeded his authority by issuing the CDC Order, vacatur is the appropriate remedy.  *See* Mot. Hr'g Rough Tr. at 13, 30–31.  Nonetheless, the Department urges the Court to limit any vacatur order to the plaintiffs with standing before this Court.  Defs.' Partial Mot. to Dismiss at 23.  This position is "at odds with settled precedent."  *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019).

This Circuit has instructed that when "regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioner is proscribed."  *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (internal quotation marks omitted); *see also O.A.*, 404 F. Supp. 3d at 109.  Accordingly, consistent with the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and this Circuit's precedent, *see Nat'l Mining Ass'n*, 145 F.3d at 1409, the CDC Order must be set aside.

*** 

The Court recognizes that the COVID-19 pandemic is a serious public health crisis that has presented unprecedented challenges for public health officials and the nation as a whole. The pandemic has triggered difficult policy decisions that have had enormous real-world consequences.  The nationwide eviction moratorium is one such decision.

It is the role of the political branches, and not the courts, to assess the merits of policy measures designed to combat the spread of disease, even during a global pandemic.  The question for the Court is a narrow one: Does the Public Health Service Act grant the CDC the legal authority to impose a nationwide eviction moratorium?  It does not.  Because the plain

language of the Public Health Service Act, 42 U.S.C. § 264(a), unambiguously forecloses the

nationwide eviction moratorium, the Court must set aside the CDC Order, consistent with the

Administrative Procedure Act, *see* 5 U.S.C. § 706(2)(C), and D.C. Circuit precedent, *see*

*National Mining Ass'n*, 145 F.3d at 1409.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion for expedited summary judgment is

granted and the Department's motion for summary judgment and partial motion to dismiss are

denied.  A separate order consistent with this decision accompanies this memorandum opinion.


DABNEY L. FRIEDRICH
May 5, 2021                                          United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ALABAMA ASSOCIATION OF
REALTORS, *et al.*,

      *Plaintiffs*,

    v.                                                         No. 20-cv-3377 (DLF)

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et al.*,

      *Defendants*.

---

## <u>ORDER</u>

For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** that the defendants' Emergency Motion for Stay Pending Appeal, Dkt. 57, is

**GRANTED**.  It is further

**ORDERED** that, pursuant to Federal Rule of Civil Procedure 62(c), this Court's May 5,

2021 Order, Dkt. 53, will remain **STAYED** pending the defendants' appeal in this matter.


DABNEY L. FRIEDRICH
May 14, 2021                                             United States District Judge

38a

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*, |
| *Plaintiffs*, |
| v. |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, |
| *Defendants*. |

No. 20-cv-3377 (DLF)

<u>**MEMORANDUM OPINION**</u>

Before the Court is the Department of Health and Human Service's ("the Department") Emergency Motion for Stay Pending Appeal.  Dkt. 57.  Pursuant to Federal Rule of Civil Procedure 62(c), the Department seeks a stay of the Court's May 5, 2021 order vacating the nationwide eviction moratorium issued by the Centers for Disease Control and Prevention ("CDC").  *See* Dkt. 53.  For the reasons that follow, the Court will grant the motion.

**I.     LEGAL STANDARD**

A stay pending appeal is an "extraordinary remedy," *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam), as it "is an intrusion into the ordinary processes of administration and judicial review," *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted).  Accordingly, it "is not a matter of right." *Id.* (internal quotation marks omitted).  "It is instead an exercise of judicial discretion" that "is dependent upon the circumstances of the particular case."  *Id.* at 433 (internal quotation marks omitted).

The moving party bears the burden of showing that this extraordinary remedy is warranted upon consideration of four factors: "(1) whether the stay applicant has made a strong

39a

showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 433–34 (internal quotation marks omitted). The first two factors "are the most critical," *id.* at 434, and when the government is a party, its "harm and the public interest are one and the same, because the government's interest *is* the public interest," *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original); *see Nken*, 556 U.S. at 435.

"The manner in which courts should weigh the four factors 'remains an open question' in this Circuit." *Nora v. Wolf*, No. 20-cv-0993, 2020 WL 3469670, at *6 (D.D.C. Jun. 25, 2020) (quoting *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)). At least in the context of weighing whether to grant a preliminary injunction, the D.C. Circuit has "suggested, without deciding," that *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), could be read to require a plaintiff "to independently demonstrate both a likelihood of success on the merits and irreparable harm," *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011)). But in the absence of clear guidance, courts in this Circuit have continued to analyze the factors "on a sliding scale whereby a strong showing on one factor could make up for a weaker showing on another." *NAACP v. Trump*, 321 F. Supp. 3d 143, 146 (D.D.C. 2018) (internal quotation marks omitted). Under this framework, a movant may make up for a lower likelihood of success on the merits "with a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious legal question' on the merits." *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)). Here, the Court will adopt the approach taken by other judges

and "apply th[is] sliding scale approach" to determine whether the Department is entitled to a stay pending resolution of its appeal. *See NAACP*, 321 F. Supp. 3d at 146 (internal quotation marks omitted). To prevail under this standard, the Department "need only raise a serious legal question on the merits" if the "other factors strongly favor issuing a stay." *Id.* (internal quotation marks omitted).

## II. ANALYSIS

### A. Likelihood of Success

As to the first factor—the likelihood of success on the merits—"[i]t is not enough that the chance of success on the merits [is] better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Rather, it must be "substantial." *Holiday Tours*, 559 F.2d at 843.

Here, the Department has not shown a substantial likelihood of success on the merits. The Public Health Service Act provides, in relevant part:

> The [CDC], with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the [Secretary] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

42 U.S.C. § 264(a).

The Department continues to argue that this statutory provision vests the Secretary with "broad authority to make and enforce" *any* regulations that "in his judgment are necessary to prevent the spread of disease," Defs.' Mot. for Summ. J. at 11 (internal quotation marks omitted), Dkt. 26, and that the second sentence of § 264(a) imposes no limit on this "broad grant of authority," Defs.' Emergency Mot. for Stay Pending Appeal ("Defs.' Mot. to Stay") at 7–8.

The Court disagrees.  Like other courts before it, this Court concluded in its May 5, 2021 Memorandum Opinion that the broad grant of rulemaking authority in the first sentence of § 264(a) is tethered to—and narrowed by—the second sentence, which enumerates various measures the Secretary "may provide for" to carry out and enforce regulations issued under § 264(a): "inspection, fumigation, disinfection, sanitation, pest extermination, [and] destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings."  42 U.S.C. § 264(a); *see* Mem. Op. of May 5, 2021 at 11, Dkt. 54. The Department is correct that this list of measures is not exhaustive, as the Secretary may provide for "other measures, as in his judgment may be necessary."  42 U.S.C. § 264(a).  But these "other measures" are "controlled and defined by reference to the enumerated categories before it."  *See Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522–23 (6th Cir. 2021) (internal quotation marks and alteration omitted).

With that in mind, the statute could be read as requiring that the enumerated measures be directed toward "animals or articles," 42 U.S.C. § 264(a), that are "found to be so infected or contaminated as to be sources of dangerous infection to human beings," *id.*; *see Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, No. 5:20-cv-2407, 2021 WL 911720, at *10 (N.D. Ohio Mar. 10, 2021); Mem. Op. of May 5, 2021 at 11–12.  Alternatively, the statute could be interpreted to tie the limitations surrounding "animals or articles" solely to "destruction."  42 U.S.C. § 264(a).  But even then, the enumerated measures—"inspection, fumigation, disinfection, sanitation, [and] pest extermination," *id.*—are "by their common meanings and understandings. . . tied to specific, identifiable properties," *Skyworks*, 2021 WL 911720, at *9. And under either reading, an eviction moratorium is "radically unlike" the measures enumerated in the statute.  *See Tiger Lily*, 992 F.3d at 524 (interpreting 42 U.S.C. § 264(a)).  As this Court

and others have noted, to read the enumerated measures in § 264(a) as imposing no limits on the

Secretary's authority to "make and enforce regulations" would raise serious constitutional

concerns.  *See* Mem. Op. of May 5, 2021 at 14 (collecting cases).

The Department also contends it has a "substantial likelihood of success on appeal

because Congress ratified the CDC Order in the 2021 Consolidated Appropriations Act."  Defs.'

Mot. to Stay at 2.  In § 502 of that Act, Congress provided:

> The order issued by the Centers for Disease Control and Prevention under section 361
> of the Public Health Service Act (42 U.S.C. 264), entitled ''Temporary Halt in
> Residential Evictions To Prevent the Further Spread of COVID–19'' (85 Fed. Reg.
> 55292 (September 4, 2020) is extended through January 31, 2021, notwithstanding the
> effective dates specified in such Order.

Pub. L. No. 116-260, § 502, 134 Stat. 1182, 2078–79 (2020).

It is true that Congress may "give the force of law to official action unauthorized when

taken."  *Swayne & Hoyt v. United States*, 300 U.S. 297, 301–02 (1937).  But to ratify such

action, Congress must make its intention clear.  *See United States v. Heinszen & Co.*, 206 U.S.

370, 390 (1907); *see also Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19

n.7 (D.C. Cir. 2006) (noting ratification may occur when there is a "clear statement of

congressional approval") (internal citation omitted).  While no "magic words are required,"

Defs.' Reply in Supp. of Partial Mot. to Dismiss at 5, Dkt. 38, Congress must use "clear and

unequivocal language," *EEOC v. CBS, Inc.*, 743 F.2d 969, 974 (2d Cir. 1984), to ratify "official

action unauthorized when taken," *Swayne & Hoyt*, 300 U.S. at 302.

Congress did not do so here.  As other cases illustrate, the language of § 502 falls short of

statutory provisions courts have found to ratify agency action.  *See, e.g.*, *Thomas v. Network

Sols., Inc.*, 176 F.3d 500, 505 (D.C. Cir. 1999) ("is hereby legalized and ratified and confirmed

as fully to all intents and purposes as if the same had, by prior act of Congress, been specifically

authorized and directed"); *Patchak v. Jewell*, 109 F. Supp. 3d 152, 158 (D.D.C. 2015) ("are ratified and confirmed"), *aff'd*, 828 F.3d 995 (D.C. Cir. 2016), *aff'd sub nom. Patchak v. Zinke*, 138 S. Ct. 897 (2018); *Am. Fed'n of Gov't Emps. v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 133 F. Supp. 2d 75, 77–78 (D.D.C. 2001) ("is hereby ratified and approved"); *James v. Hodel*, 696 F. Supp. 699, 701 (D.D.C. 1988) ("Congress hereby ratifies and confirms"), *aff'd sub nom. James v. Lujan*, 893 F.2d 1404 (D.C. Cir. 1990); *Heinszen*, 206 U.S. at 381 ("hereby legalized and ratified" and "is hereby legalized and ratified and confirmed as fully to all intents and purposes as if the same had, by prior act of Congress, been specifically authorized and directed"); *cf. Ex parte Endo*, 323 U.S. 283, 303 n.24 (1944) (ratification may occur through an appropriation only if the appropriation "plainly show[s] a purpose to bestow the precise authority which is claimed."); *Schism v. United States*, 316 F.3d 1259, 1290 (Fed. Cir. 2002) ("[R]atification ordinarily cannot occur in the appropriations context unless the appropriations bill itself *expressly* allocates funds for a specific agency or activity.") (emphasis added).

By contrast, when Congress enacted § 502 of the Consolidated Appropriations Act, it simply acknowledged that the CDC issued its order pursuant to the Public Health Service Act. Mem. Op. of May 5, 2021 at 18.  It did not expressly approve of the agency's interpretation of 42 U.S.C. § 264(a), nor did it provide the agency with any additional statutory authority.  *See id.* "All § 502 did was congressionally extend the agency's action until January 31, 2021." *Tiger Lily*, 992 F.3d at 524.  Because that date has now passed—and Congress has therefore withdrawn its support—the CDC Order must rely exclusively on the text of the Public Health Service Act. *See id.*

The Department also points to the "nationwide reach of this Court's judgment," Defs.' Reply in Supp. of Mot. to Stay at 7, Dkt. 59, and insists that "traditional principles of equity and

Article III jurisdiction *require* limiting relief to the Plaintiffs," Defs.' Mot. to Stay at 8–9 (emphasis added).  This argument, however, is "at odds with settled precedent."  *See O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019).  The D.C. Circuit has instructed that when a regulation is declared unlawful, "the ordinary result is that the rule[] [is] vacated—not that [its] application to the individual petitioner is proscribed."  *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (internal quotation marks omitted).  In this Circuit, "the law is clear that when a court vacates an agency rule, the vacatur applies to all regulated parties, not only those formally before the court."  *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 415 (D.D.C. 2020); *O.A.*, 404 F. Supp. 3d at 152 (collecting cases).

For these reasons and for those stated in the Court's May 5, 2021 Memorandum Opinion, the Department has not shown a substantial likelihood of success on the merits.  Arguably, the Department's failure to meet this standard is a fatal flaw for its motion.  *See M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020) (citing *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam)).  Indeed, in another case challenging the CDC Order, the Sixth Circuit denied a similar emergency motion for stay on this ground alone.  *See Tiger Lily*, 992 F.3d at 524 ("Given that the government is unlikely to succeed on the merits, we need not consider the remaining stay factors.").

But, as noted, in this Circuit a movant's failure to demonstrate a likelihood of success on the merits does not preclude a stay if they have raised a "serious legal question on the merits."  *See Cigar Ass'n of Am.*, 317 F. Supp. 3d at 560 (internal quotation marks omitted); *Holiday Tours*, 559 F.2d at 843.  Although a majority of courts that have addressed the lawfulness of the CDC Order reached the same conclusion as this Court, *see* Mem. Op. of May 5, 2021 at 5 (collecting cases), two have disagreed, at least at the preliminary injunction stage, *see Brown v.*

*Azar*, No. 20-cv-03702, 2020 WL 6364310, at *9–11 (N.D. Ga. Oct. 29, 2020), *appeal filed*, No. 20-14210 (11th Cir. 2020); *Chambless Enters., LLC v. Redfield*, No. 20-cv-01455, 2020 WL 7588849, at *5–9 (W.D. La. Dec. 22, 2020), *appeal filed,* No. 21-30037 (5th Cir. 2021).  Given the diverging rulings of these courts and the significance of the CDC Order, the Department has met this less demanding standard.  *See Cigar Ass'n of Am.*, 317 F. Supp. 3d at 560 (internal quotation marks omitted).  The Department therefore can obtain a stay if it makes a sufficiently strong showing as to the remaining stay factors.  *See NAACP*, 321 F. Supp. 3d at 146.

### B.  Remaining Factors

As to the second factor—whether the movant will be irreparably injured absent a stay— the movant must make a strong showing "that the injury claimed is both certain and great." *Cuomo*, 772 F.2d at 976 (internal quotation marks omitted).  "Probability of success is inversely proportional to the degree of irreparable injury evidenced."  *Id.* at 974.  "A stay may be granted with either a high probability of success and some injury, or vice versa."  *Id.*

The Department has made a showing of irreparable injury here.  As the federal agency tasked with disease control, the Department, and the CDC in particular, have a strong interest in controlling the spread of COVID-19 and protecting public health.  The CDC's most recent order is supported by observational data analyses that estimate that as many as 433,000 cases of COVID-19 and thousands of deaths could be attributed to the lifting of state-based eviction moratoria.  *See* 86 Fed. Reg. 16,731, 16,734 (Mar. 31, 2021).  The CDC Order also cites a mathematical model that "estimate[s] that anywhere from 1,000 to 100,000 excess cases per million population could be attributable to evictions depending on the eviction and infection rates."  *Id.*  To be sure, these figures are estimates, but they nonetheless demonstrate that lifting the national moratorium will "exacerbate the significant public health risks identified by [the]

CDC." Defs.' Mot. to Stay at 3. Even though "vaccinations are on the rise," Pls.' Opp'n at 2, at least as of last week, the nation was averaging "more than 45,000 new infections per day," Defs.' Mot. to Stay at 5–6, and the recent "emergence of variants" presents yet another potential cause for concern, *see* 86 Fed. Reg. at 16,733. Thus, the risks to public health continue.

As to the third factor—the risk of injury to the plaintiffs—the economic impact of the CDC Order is indeed substantial. *See* Mem. Op. of May 5, 2021 at 15 n.4. The plaintiffs assert that landlords will continue to lose between $13.8 and $19 billion each month in unpaid rent as a result of the CDC Order, and that over the course of the year their cumulative losses will be close to $200 billion. Pl's Opp'n at 7 (citing Decl. of Scholastica Cororaton ¶¶ 15, 17, Dkt. 6-4).

While these financial losses are severe, some are recoverable. *See Brown*, 2020 WL 6364310, at *20 (explaining that the fact "tenants may not currently be able to afford their rent" does not mean that the plaintiffs "will likely never be able to collect a judgment"). The CDC Order itself does not excuse tenants from making rental payments. *See* 86 Fed. Reg. at 16,736. It simply delays them. *See id.* Congress also has taken steps to provide financial relief to tenants and landlords through the Consolidated Appropriations Act, § 501, 134 Stat. at 2070–78, and the American Rescue Plan Act, Pub. L. No. 117-2, § 3201(a)(1), 135 Stat. 4, 54 (2021). These efforts help mitigate the landlords' financial losses.

A stay to allow the D.C. Circuit time to review this Court's ruling, presumably on an expedited basis, will no doubt result in continued financial losses to landlords. But the magnitude of these additional financial losses is outweighed by the Department's weighty interest in protecting the public. *See League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129–30 (6th Cir. 2020).

Finally, the fourth factor—the public interest—weighs in favor of a stay for the public health reasons discussed. The fact that this "litigation presents questions of 'extraordinary public moment' [is] a consideration which [also] militates in favor of a stay." *Al-Adahi v. Obama*, 672 F. Supp. 2d 81, 84 (D.D.C. 2009) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)).

* * *

Weighing each of the traditional stay factors, the Court will exercise its discretion to grant the Department's Emergency Motion for Stay Pending Appeal. Although the Court believes, as one Circuit has already held, *see Tiger Lily*, 992 F.3d at 524, there is not a substantial likelihood the Department will succeed on appeal, the CDC's nationwide eviction moratorium raises serious legal questions. The Department also has made a sufficiently strong showing as to the remaining factors to justify a stay of this Court's decision.

The Court remains mindful that landlords across the country have incurred substantial economic hardships as a result of the CDC's nationwide moratorium on evictions. The longer the moratorium remains in effect, the more these hardships will be exacerbated. Even so, given the public health consequences cited by the CDC, a stay is warranted.

## CONCLUSION

For the foregoing reasons, the Department's Emergency Motion for Stay Pending Appeal is granted. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

May 14, 2021

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 21-5093**                                    **September Term, 2020**

**1:20-cv-03377-DLF**

**Filed On:** June 2, 2021

Alabama Association of Realtors, et al.,

      Appellees

   v.

United States Department of Health and
Human Services, et al.,

      Appellants

---

**BEFORE:**     Millett, Pillard, and Wilkins, Circuit Judges

## O R D E R

The United States Department of Health and Human Services, the Centers for Disease Control and Prevention ("CDC"), and other federal agencies and officials (collectively, "HHS") appeal the district court's order entering summary judgment in favor of Appellees and vacating the nationwide temporary eviction moratorium instituted by the CDC in light of the COVID-19 pandemic. Shortly after HHS noticed the appeal, the district court entered an administrative stay of its order, and HHS filed in this court a contingent emergency motion for a stay pending appeal in the event the district court did not grant the stay motion HHS filed in that court. The district court subsequently stayed its own summary judgment order pending appeal. Appellees have filed in this court an emergency motion to vacate that stay pending appeal. Upon consideration of Appellees' emergency motion to vacate the stay pending appeal, the opposition thereto, and the reply, HHS's contingent emergency motion for a stay, and the motion for leave to participate as amicus and the lodged amicus brief, it is

**ORDERED** that the motion to vacate the stay pending appeal be denied. In evaluating a motion to vacate a stay entered by the district court, this court reviews the district court's decision under the deferential abuse-of-discretion standard of review. See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843–44 (D.C. Cir. 1977); see also Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011).

The district court did not abuse its discretion in granting a stay in this case. Under this court's traditional four-factor test for a stay, we ask whether (1) the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) the

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 21-5093**                                         **September Term, 2020**

applicant will be irreparably injured absent a stay; (3) issuance of a stay would substantially injure other interested parties; and (4) the public interest favors or disfavors a stay.  See Nken v. Holder, 556 U.S. 418, 434 (2009); see also Alabama Ass'n of Realtors v. HHS, No. 20-cv-3377 (DLF), 2021 WL 1946376, at *1 (D.D.C. May 14, 2021).  While Appellees object to the district court's use of a sliding-scale analysis, we need not and do not address the propriety of that approach because Appellees have not shown that vacatur is warranted under the likelihood-of-success standard that they would apply.

As to the first factor, while of course not resolving the ultimate merits of the legal question, we conclude that HHS has made a strong showing that it is likely to succeed on the merits.  See Nken, 556 U.S. at 434.  We do so for the following four reasons.

First, the CDC's eviction moratorium falls within the plain text of 42 U.S.C. § 264(a).  Congress expressly determined that responding to events that by their very nature are unpredictable, exigent, and pose grave danger to human life and health requires prompt and calibrated actions grounded in expert public-health judgments. Section 264(a) authorizes the Secretary of HHS "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession."  42 U.S.C. § 264(a).[1] Congress thereby designated the HHS Secretary the expert best positioned to determine the need for such preventative measures, twice stating that it authorizes such measures as the Secretary determines "in his judgment [are] necessary." 42 U.S.C. § 264(a).  That text also makes a determination of necessity a prerequisite to any exercise of Section 264 authority, and that necessity standard constrains the granted authority in a material and substantial way.

Here, to ensure that the moratorium was tailored to the necessity that prompted it, HHS carefully targeted it to the subset of evictions it determined to be necessary to curb the spread of the deadly and quickly spreading Covid-19 pandemic.  Notably, Appellees do not dispute HHS's determination that the moratorium would "prevent the [interstate] introduction, transmission, or spread" of COVID.  Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292, 55,295 (Sept. 4, 2020) ("The statistics on interstate moves show that mass evictions would likely increase the interstate spread of COVID-19.").  The agency reasonably

_____

[1]  The Surgeon General's and the Secretary's authority under this provision has been delegated to the Director of the CDC.  See Reorganization Plan No. 3 of 1966, 31 Fed. Reg. 8855 (June 25, 1966); 42 C.F.R. § 70.2.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

## No. 21-5093                                September Term, 2020

recognized that evicted people must move, and that a time-limited eviction moratorium would directly promote the self-isolation needed to help control the pandemic.  Id. at 55,294–55,295; Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 16,731, 16,733 (Mar. 31, 2021).  The moratorium also applies only to those renters that the agency determined otherwise would likely need to move to congregate settings where COVID spreads quickly and easily, or would be rendered homeless and forced into shelters or other settings that would increase their susceptibility to COVID, the uncontained spread of the disease, and the adverse health consequences of its contraction.  86 Fed. Reg. at 16,735.  In those ways, the moratorium fits within the textual authority conferred by Section 264(a) to adopt measures necessary to prevent the spread of a pandemic.

Second, Congress has expressly recognized that the agency had the authority to issue its narrowly crafted moratorium under Section 264.  Last December, rather than enact its own moratorium, Congress deliberately chose legislatively to extend the HHS moratorium and, in doing so, specifically to embrace HHS's action "under section 361 of the Public Health Service Act (42 U.S.C. 264)[.]"  Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, title V, § 502, 134 Stat. 1182, 2078–79 (Dec. 27, 2020).

Third, the text and structure of Section 264's additional provisions—beyond the core statutory authority to take action "necessary" to "prevent the introduction, transmission, or spread of communicable diseases" interstate and internationally—reinforce HHS's authority to temporarily suspend evictions.  The second sentence of Section 264(a) provides that, "[f]or purposes of carrying out and enforcing such regulations" as are authorized by the provision's first sentence, "the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."  42 U.S.C. § 264(a).  That language makes clear that HHS has even the exceptional authority to take measures carrying out its regulations that Congress in 1944 had reason to believe required express congressional authorization under the Fourth Amendment.  See Oklahoma Press Publ'g Co. v. Walling Wage & Hour Adm'r, 327 U.S. 186, 201 & nn.26, 27 (1946) (citing FTC v. American Tobacco Co., 364 U.S. 298, 305–06 (1924)).

Appellees argue that the balance of Section 264(a) constricts the scope of the regulatory authority the statute confers, and that the moratorium exceeds that authority.  They argue, in particular, that the regulatory power under the first sentence of Section 264(a) is limited to measures closely akin to those the second sentence enumerates.  That is incorrect.  By its plain wording, the second sentence applies not to the

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 21-5093**                                        **September Term, 2020**

substantive scope of the regulatory authority conferred, but to the measures that HHS can deploy to "carry[] out and enforc[e] such regulations[.]"  42 U.S.C. § 264(a).  That is language of expansion, not contraction, designed to strengthen HHS's ability to take the measures determined to be necessary to protect the public health from the dangers posed by contagious diseases that respect no boundaries.  The ensuing subsections (b), (c), and (d) of Section 264 reinforce that point by their explicit reference to HHS's regulatory power over the movement of persons to prevent the spread of communicable disease.  Indeed, contrary to their cramped reading of Section 264(a), appellees acknowledge in their reply brief (at page 5) that Section 264's regulatory power includes the power to prevent the interstate movement "of contagious persons[.]"  That is the objective of the eviction moratorium.

Fourth, HHS is likely to succeed notwithstanding the Appellees' other statutory-construction arguments.  Appellees suggest that a moratorium reaching rental property should be narrowly construed to avoid intrusion on "an area traditionally left to the States."  Appellant Br. 13.  But Congress has well-established authority to regulate rental housing transactions because they "substantially affect[]" interstate commerce.  Rancho Viejo, LLC v. Norton, 323 F.3d 1062, 1066, 1068–70 (D.C. Cir. 2003) (quoting United States v. Lopez, 514 U.S. 549, 558-59 (1995)); see Russell v. United States, 471 U.S. 858, 862 (1985).  Tellingly, under appellees' Commerce Clause theory, even Congress's extension of the moratorium was unconstitutional—a point that Appellees do not even acknowledge, let alone answer.

HHS is also likely to succeed despite Appellants' federalism objection because Congress expressly empowered HHS to act in areas of traditional state authority when necessary to prevent interstate transmission of disease.  See Gregory v. Ashcroft, 501 U.S. 452, 460 (1991).  Appellees' major-questions objection does not change the calculus, given the statute's plain text and Congress's explicit embrace in the Consolidated Appropriations Act of action it referenced HHS having taken under 42 U.S.C. § 264.  Cf. Utility Air Regulatory Grp. v. EPA, 573 U.S. 302, 324 (2014).  As for Appellees' non-delegation argument, Section 264's requirement that the regulatory measures adopted be "necessary to prevent the introduction, transmission, or spread of communicable diseases," 42 U.S.C. § 264(a), provides an intelligible principle that guides the agency's authority.  See Gundy v. United States, 139 S. Ct. 2116, 2129 (2019); Whitman v. American Trucking Ass'ns, 531 U.S. 457, 472 (2001); Mistretta v. United States, 488 U.S. 361, 372–73 (1989).

To be sure, HHS has not previously imposed a rental-eviction moratorium under Section 264.  But no public health crisis even approaching the scale and gravity of this one has occurred since the Public Health Service Act was passed in 1944.  Appellees point to the lack of other eviction moratoria as a reason to question the Secretary's

# United States Court of Appeals
### For The District of Columbia Circuit
_____

**No. 21-5093**                              **September Term, 2020**

power here, but the paucity of examples more likely underscores that the statutory constraints on HHS's regulatory authority work.  Cf. Appellees' Br. In Supp. of Emergency Mot. to Vacate Stay 11-12; (quoting Utility Air Regulatory Grp., 573 U.S. at 324); Reply Br. 5.

The district court acted within its discretion in concluding that the remaining factors supported its stay of its own order.  HHS has demonstrated "that lifting the national moratorium will 'exacerbate the significant public health risks identified by [the] CDC'" because, even with increased vaccinations, COVID-19 continues to spread and infect persons, and new variants are emerging.  See Alabama Ass'n of Realtors, 2021 WL 1946376, at *4 (citation omitted).  The government's interest in avoiding this harm merges with the public interest factor.  See Pursuing America's Greatness v. FEC, 831 F.3d 500, 511 (D.C. Cir. 2016) ("[I]n this case, the FEC's harm and the public interest are one and the same, because the government's interest *is* the public interest." (emphasis in original)).

As for harms to other parties, including Appellees, the record does not show any likelihood of irreparable injury.  Appellees' briefs make conclusory reference to general financial harms their declarant suggested could befall landlords nationwide.  But the record is devoid of the requisite evidence of irreparable injury likely to befall the landlord parties to this case.  In particular, the record does not demonstrate any likelihood that Appellees' themselves will lose their businesses, that an appreciable percentage of their own tenants who would otherwise pay in full will be unable to repay back rent, or that financial shortfalls are unlikely ultimately to be mitigated.

To the contrary, the calibrated design of the moratorium evidences and embodies Section 264's limitations on HHS's authority, ensuring that the steps taken are all "necessary."  42 U.S.C. § 264(a).  More specifically, the moratorium imposes several exacting conditions that circumscribe the reach and degree of relief the order provides, and narrowly tailors the imposition on landlords.

For starters, not all tenants qualify for relief.  The moratorium applies only to renters (not mortgage holders or hotel guests) (i) who cannot find other non-shared, non-congregate housing, and (ii) whose economic need meets a stated level, arises from specified circumstances, and could not otherwise be abated.  See 86 Fed. Reg. at 16,731–16,732 (definition of "Covered person" paragraphs (1)–(3), (5); and definition of "Residential property").  And the order allows landlords to initiate eviction proceedings and even to obtain removal orders—it is only the enforcement of such orders that has been temporarily halted.  See 85 Fed. Reg. at 55,293 (defining "[e]vict" in part as "to remove or cause the removal of" a covered person from a residential property); CDC, *HHS/CDC* Temporary Halt in Residential Evictions to Prevent the Further Spread of

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 21-5093**                                                **September Term, 2020**

COVID-19: Frequently Asked Questions 1, https://go.usa.gov/xHvzV (last visited June 1, 2021) (The moratorium is not "intended to prevent landlords from starting eviction proceedings, provided that the actual physical removal of a covered person for non-payment of rent does NOT take place during the period of the Order.") (emphasis in original).

On top of that, the obligation to pay all rent due remains, and provision has been made to address the interim shortfalls.  Even those tenants who do qualify for protection remain obligated to pay their rent, and to make best efforts to promptly pay in part or full.  86 Fed. Reg. at 16,732 (definition of "Covered person" paragraph (4)); id. at 16,738.  The order specifically preserves the landlords' legal right to recover all rent owed with interest and penalties.  See 85 Fed. Reg. at 55,294–97.  In the meantime, Congress has allocated substantial sums of money for rental assistance that is intended and designed to run to landlords like Appellees.  See, e.g., Consolidated Appropriations Act, 2021, div. N, title V, § 501, 134 Stat. at 2070-78.

The fact that Appellees waited eleven weeks before bringing their challenge to the moratorium and have not asked this court for an expedited resolution of the merits of the appeal further suggests that the current moratorium extension—from March 31 through June 30, 2021—does not impose irreparable harm supporting vacatur of the stay.  Cf. Fund for Animals v. Frizzell, 530 F.2d 982, 987 (D.C. Cir. 1975).

Given all of that, the district court properly concluded that Appellees' financial losses are at least partially recoverable, at least partially mitigated through relief from Congress, and "the magnitude" of any "additional financial losses [incurred during appeal] is outweighed by HHS's weighty interest in protecting the public" health, Alabama Ass'n of Realtors, 2021 WL 1946376, at *5—an interest that also satisfies the fourth stay factor, id.

For the foregoing reasons, the district court did not abuse its discretion in staying its order pending appeal.  It is

**FURTHER ORDERED** that the government's emergency motion for a stay be dismissed as moot.  It is

**FURTHER ORDERED** that the motion for leave to participate as amicus be

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 21-5093**                          **September Term, 2020**

denied without prejudice.  The court will entertain motions to participate as amicus that are accompanied by merits briefs.

## Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Tatiana Magruder
Deputy Clerk

# SUPREME COURT OF THE UNITED STATES

_____

No. 20A169

_____

## ALABAMA ASSOCIATION OF REALTORS, et al. *v.* DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.

ON APPLICATION TO VACATE STAY

[June 29, 2021]

The application to vacate stay presented to The Chief Justice and by him referred to the Court is denied.

Justice Thomas, Justice Alito, Justice Gorsuch, and Justice Barrett would grant the application.

Justice Kavanaugh, concurring.

I agree with the District Court and the applicants that the Centers for Disease Control and Prevention exceeded its existing statutory authority by issuing a nationwide eviction moratorium. See *Utility Air Regulatory Group* v. *EPA*, 573 U. S. 302, 324 (2014). Because the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds, I vote at this time to deny the application to vacate the District Court's stay of its order. See *Barnes* v. *E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan*, 501 U. S. 1301, 1305 (1991) (Scalia, J., in chambers) (stay depends in part on balance of equities); *Coleman* v. *Paccar Inc.*, 424 U. S. 1301, 1304 (1976) (Rehnquist, J., in chambers). In my view, clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*, <br><br>      *Plaintiffs*, <br><br>   v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br>      *Defendants*. | No. 20-cv-3377 (DLF) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the plaintiffs' Emergency Motion to Enforce the Supreme Court's Ruling and to Vacate the Stay Pending Appeal.  Dkt. 67.  For the reasons that follow, the Court will deny the motion.

## I.    BACKGROUND

As part of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), Congress enacted a 120-day eviction moratorium that applied to all rental properties receiving federal assistance.  *See id.* § 4024(b), 134 Stat. at 492–94.  When that moratorium expired, the U.S. Department of Health and Human Services (HHS), through the Centers for Disease Control and Prevention (CDC), imposed a broader eviction moratorium that applied to all rental properties in the United States.  *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020).  In December 2020, Congress granted a 30-day extension of that moratorium.  *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 502, 134 Stat. 1182, 2078–79 (2020).  The CDC then further extended it, first in January 2021 and then in March 2021.  *See* Temporary

Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 8020 (Feb. 3, 2021); Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 16,731 (Mar. 31, 2021).

This Court vacated the CDC's eviction moratorium on May 5, 2021.  *See* Mem. Op. of May 5, 2021, Dkt. 54*.*  One week later, the Court issued a stay of vacatur pending appeal.  Mem. Op. of May 14, 2021, Dkt. 61.  In turn, on June 2, 2021, the D.C. Circuit declined to vacate the stay in an unpublished, *per curiam* judgment.  Order of June 2, 2021, *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 21-5093, 2021 WL 2221646 (D.C. Cir. June 2, 2021).

On June 24, 2021, after the plaintiffs asked the Supreme Court to vacate the stay, the CDC again extended the eviction moratorium for a third time.  *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 34,010 (June 28, 2021).  In so doing, the CDC represented both in the extension order itself and to the Supreme Court that, "absent an unexpected change in the trajectory of the pandemic, CDC does not plan to extend the Order [beyond July 31, 2021]."  *See id.* at 34,013; Letter from Acting Solicitor General Elizabeth Prelogar to Clerk of Court Scott Harris at 1 (June 24, 2021), *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 20A169.

On June 29, 2021, the Supreme Court denied the plaintiffs' application to vacate the stay, based in part on the CDC's representation that it would not further extend the moratorium.  *See Ala. Ass'n. of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2320, 2320 (2021) (Mem.) (Kavanaugh, J. concurring).  Four Justices, however, voted to vacate the stay immediately.  *Id.*  And Justice Kavanaugh, whose vote to leave the stay in place was essential to the Court's disposition, made clear his view that the CDC "exceeded its existing statutory authority by issuing a nationwide eviction moratorium."  *Id.* at 2320–21.  Even so, Justice Kavanaugh

reasoned that "[b]ecause the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriate rental assistance funds," the balance of the equities favored leaving the stay in place. *Id.* Thereafter, Justice Kavanaugh wrote, "clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium." *Id.*

In the following weeks, the Biden Administration repeatedly stated that it would not further extend the eviction moratorium in light of the Supreme Court's ruling, which it interpreted to "mak[e] clear" the option "is no longer available." Pls.'s Reply at 1–2, Dkt. 71 (quoting White House, Statement by White House Press Secretary Jen Psaki on Biden-Harris Administration Eviction Prevention Efforts (July 29, 2021)). And the Administration stressed that the CDC agreed with this interpretation, stating that "the CDC Director and her team have been unable to find legal authority, even for a more targeted eviction moratorium that would focus [just] on counties with higher rates of COVID spread." Mot. Hr'g Tr. at 20 (quoting White House, Press Briefing by Press Secretary Jen Psaki and White House American Rescue Plan Coordinator and Senior Advisor to the President Gene Sperling (Aug. 2, 2021)).

Nonetheless, on August 3, 2021, three days after the prior policy lapsed, the CDC renewed a moratorium on evictions in the United States. *See* Temporary Halt in Residential Evictions in Communities with Substantial or High Transmission of COVID-19 to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 43,244 (Aug. 6, 2021). Scheduled to run through October 3, 2021, the current moratorium differs from its predecessor in that it applies only "in U.S. count[ies] experiencing substantial or high levels of community transmission levels of SARS-CoV-2 as defined by CDC." *Id.* at 43,245 (citations omitted). Otherwise, as discussed in

greater depth below, the current moratorium is virtually identical to the moratorium that the parties litigated before the Supreme Court.  *Compare id.*, *with* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 34,010 (June 28, 2021).

On August 4, 2021, the plaintiffs filed an "Emergency Motion to Enforce the Supreme Court's Ruling and to Vacate the Stay Pending Appeal."  Dkt. 67.  In their motion in opposition, the government argued that the D.C. Circuit's June 2 judgment is the law of the case and so requires this Court to maintain the stay.  Dkt. 69.  The plaintiffs' motion is now ripe for review.

## II.    ANALYSIS

Before addressing the plaintiffs' motion, the Court must first decide whether the current moratorium is an extension or an entirely new policy.  Because the current moratorium is an extension, it is subject to the stay and can be challenged in this action.  Even so, the law of the case doctrine prevents the Court from lifting the stay, and therefore, the Court will deny the plaintiffs' motion.

### A.    The Current Eviction Moratorium Is Subject to the Stay

It is well-established that federal courts have the "inherent power to enforce [their] judgments."  *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *see also Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002) (noting that district courts' interpretive authority is connected to their enforcement authority); *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 131 (3d Cir. 2005) ("[A] district court has inherent authority to ensure that prevailing parties are able to enforce prior judgments.").  Here, the plaintiffs ask the Court to either vacate the current moratorium or "simply clarify[] that [this Court's] original vacatur order covers it."  Pls.'s Br. at 2–3, Dkt. 67.  Given the procedural posture of this case, and because the plaintiffs seek to "clarify something ambiguous or vague, not to alter or amend," *United States v. Philip Morris USA, Inc.*, 793 F.

Supp. 2d 164, 168 (D.D.C. 2011) (citation omitted), this Court construes the plaintiffs' filing as a motion for clarification of the Court's May 5 vacatur order.  To resolve that motion, the Court must "pull back the curtain" to determine whether the current moratorium is "so related" to the prior moratorium that an order vacating the latter also applies to the former.  *Wash. Metro. Area Transit Auth. Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015).

The Court begins with the moratorium's text.  There are two substantive differences between the current moratorium and the moratorium that this Court considered on May 5, 2021. First, the current moratorium is effective through October 3, 2021, and covers all evictions initiated but not finalized before the order's promulgation on August 3, 2021.  86 Fed. Reg. at 43,247, 43,250.  Second, the current moratorium applies only "in U.S. counties experiencing substantial and high levels of community transmission levels of SARS-CoV-2 as defined by CDC,"[1] *id.* at 43,250 (citations omitted)—a category that presently includes roughly ninety-one percent of U.S. counties, *see* CDC, *COVID Data Tracker: Integrated Country View*, https://covid.cdc.gov/covid-data-tracker/#county-view (last visited Aug. 13, 2021).  In contrast, the previous moratorium applied in all U.S. counties.  86 Fed. Reg. at 34,010.  Apart from these differences, the moratoria are virtually identical—the remainder of their definitions are the same, their exceptions are the same, their applicability provisions are the same, and the criminal penalties for violating those provisions are the same.  And the CDC designed the current

---

[1] The moratorium contains several provisions that further define the scope of its coverage.  To begin, the order applies in all counties that experience substantial or high transmission levels "as of August 3, 2021."  86 Fed. Reg. at 43,250.  From there, if an additional county experiences those transmission levels, "that county will become subject to this Order as of the date the county begins experiencing substantial or high levels of community transmission."  *Id.*  Additionally, if a county that is covered by the order "no longer experiences substantial or high levels of community transmission for 14 consecutive days," the order "will no longer apply in that county, unless and until the county again experiences substantial or high levels of community transmission."  *Id.*

moratorium to be continuous with its antecedents, insofar as it exempts persons covered under those antecedents from filing new declarations of eligibility.  *See* 86 Fed. Reg. at 43,245 n.7.

The minor differences between the current and previous moratoria do not exempt the former from this Court's order.  For obvious reasons, extending the effective dates of a vacated order does not evade the effects of the vacatur.  Indeed, consistent with that principle, both the government and the Supreme Court already considered one extension of the moratorium *in pari materia* with the version that this Court addressed in May.  *See* Letter from Acting Solicitor General Elizabeth Prelogar, *supra*; *Ala. Ass'n of Realtors*, 141 S. Ct. at 2320–21 (Kavanaugh, J., concurring).  Further, although the CDC has excluded some counties from the latest moratorium's reach, the policy remains effective nationwide, shares the same structure and design as its predecessors, provides continuous coverage with them, and purports to rest on the same statutory authority.  In the analogous context of the voluntary cessation doctrine, courts frown upon attempts to moot out legal challenges by repealing one rule and "replac[ing] it with a policy that is fundamentally similar."  *Am. Freedom Defense Inst. v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 362 (D.C. Cir. 2018).  Rather, courts treat the replacement policy as merely a renewal of the challenged conduct, such that it is reviewable in the same action.  *See id.*  So too here.  Because the current moratorium is fundamentally similar to its predecessors, it is "so related" to them as to fall within the May 5 vacatur order.  *Reliable Limousine Serv.*, 776 F.3d at 9.

The government conceded this point at oral argument.  There, it explained that "the statutory basis for the new order is the same as the statutory basis for the previous order," Mot. Hr'g Tr. at 11, and that the few modifications to the former would not "necessarily be relevant under this Court's summary judgment ruling," *id.* at 12.  The government also disclaimed any

arguments that this case "was mooted out by the three-day lapse [in] the existence of a moratorium" or that the "plaintiffs needed to bring a new case." *Id.* at 11.  Finally, as a necessary predicate to its reliance on the law-of-the-case doctrine, the government argued that both this Court's rulings and "the preceden[ts] of the D.C. Circuit" continue to bind this Court. *Id.*[2]

For these reasons, the Court concludes that the current eviction moratorium is an extension of the vacated moratoria, such that it is subject to this Court's May 5 order and its subsequent stay pending appeal.  The plaintiffs' motion to vacate the stay is thus ripe for review.

## B.      The Law-of-the-Case Doctrine Prevents the Court from Lifting the Stay

"When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay *sua sponte* or upon motion." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003).  The party seeking continuation of a stay "bears the burden of showing his entitlement to [it]." *Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014) (citation omitted).  In assessing whether to lift a stay, a court considers the traditional four stay factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 426 (2009).

---

[2] Having argued that the current moratorium is a mere extension of the old moratorium, that it is covered by this Court's May 5 order, and that the plaintiffs need not file a separate action to challenge its terms, the government is presumably estopped from arguing to the contrary on appeal.  *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *see also Davis v. Wakelee*, 156 U.S. 680, 689 (1895) (similar).

Rather than address any of these factors on the merits, the government argues that the law-of-the-case doctrine requires the Court to maintain the stay as a matter of law. Defs.'s Br. at 6–8, Dkt. 69. This Court agrees. Because the D.C. Circuit's judgment affirming the stay binds this Court and the Supreme Court did not overrule that judgment, the Court will deny the plaintiffs' motion.

As a general matter, the law-of-the-case doctrine provides that "a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). Under the doctrine, "the *same* issue presented a second time in the *same* case in the *same* court should lead to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Additionally, when an appellate court has reached and necessarily decided an issue of fact or law, the doctrine provides that a district court in the same case "has no power or authority to deviate from" the appellate court's conclusion. *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948); *see also Hodge v. Evans Fin. Corp.*, 823 F.2d 559, 567 (D.C. Cir. 1987) (holding that a "trial court is without power to reconsider issues decided on a previous appeal" (citation omitted)).

"For a ruling or decision to become the law of the case, it must . . . be final as to the matters involved." Bryan A. Garner, et al., *The Law of Judicial Precedent* 448 (2016). Finality in this context does not require a final, appealable judgment. *See Thomas v. Gandhi*, 650 F. Supp. 2d 35, 39 (D.D.C. 2009). Instead, the condition is satisfied whenever an appellate court has "affirmatively decided" a question of fact or law. *Crocker*, 49 F.3d at 739. Here, the government argues that three conclusions in the D.C. Circuit's judgment qualify as the law of the case: first, that the government was likely to succeed on the merits, *see Ala. Ass'n of Realtors*, 2021 WL 2221646, at *1–3; second, that the plaintiffs failed to show irreparable harm, *see id.* at

\*3; and third, that "the magnitude of any additional financial losses incurred during appeal is outweighed by HHS's weighty interest in protecting the public health," *id.* at \*4 (alterations and citations omitted). Because these are clearly affirmative decisions by that court, *see Crocker*, 49 F.3d at 739, and because the court reached them in this same case, the government is correct that they are binding here.

The plaintiffs argue that those conclusions are not the law of the case because the D.C. Circuit reached them in affirming a grant of emergency relief. For this purpose, the plaintiffs invoke *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974), which held that "[t]he decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute the law of the case for the purposes of further proceedings." *Id.* at 518. They also invoke *Belbacha v. Bush*, 520 F.3d 452 (D.C. Cir. 2008), which found that an "order denying preliminary relief . . . [did] not constitute the law of the case." *Id.* at 458 (citation omitted).

Neither of those holdings apply here. In *Berrigan*, the D.C. Circuit had granted emergency relief to two parolees after finding that their constitutional challenge was likely to succeed on the merits. *See* 499 F.2d at 517. Against that backdrop, *Berrigan* clarified that no law of the case prevented either "the parties from litigating the merits" or the district court from deciding the merits in the non-movants' favor. *Id.* at 518. Likewise, in *Belbacha*, the district court had denied a detainee's motion for a temporary restraining order, and the D.C. Circuit had also denied emergency relief. *See* 520 F.3d at 454–55. *Belbacha* confirmed that neither of those emergency decisions—including their subsidiary determinations that the detainee was unlikely to prevail on the merits—bound the district court in resolving the merits. *See id.* at 458. Both *Berrigan* and *Belbacha*, as the D.C. Circuit later explained, follow from the basic "element[s] of the law-of-the-case rule." *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012). When an

appellate court "predicts" who "*likely* will or will not succeed on the merits," it does not

"affirmatively decide[]" the merits, and so creates no law of the case regarding them.  *Id.*  The

same reasoning does not apply, however, when a district court must decide whether a movant is

likely to succeed on the merits after a court of appeals has already resolved that same question in

the same case.  Neither *Berrigan* nor *Belbacha* suggest that the district court has discretion in

that posture.  Thus, although "findings of fact and conclusions of law made by a court granting a

preliminary injunction are not binding at trial on the merits," *Univ. of Texas v. Camenisch*, 451

U.S. 390, 395 (1981), they are binding on further requests for emergency relief.

A contrary approach to the law-of-the-case doctrine would produce absurd results

whenever a district court and a court of appeals disagree over emergency relief.  For example, if

a district court granted a stay and a court of appeals vacated it, the plaintiffs' approach to the

law-of-the-case doctrine would allow the district court to reissue an identical stay in the same

case.  That result would flaunt basic principles of vertical stare decisis—"a critical aspect of our

hierarchical Judiciary headed by 'one supreme Court.'"  *Winslow v. FERC*, 587 F.3d 1133, 1135

(D.C. Cir. 2009) (quoting U.S. Const. art. III, § 1).  The same principles apply here, where the

D.C. Circuit concluded that the government is likely to succeed on the merits and the plaintiffs

ask this Court to vacate its stay on the opposite ground.

It is true that the Supreme Court's recent decision in this case strongly suggests that the

CDC is unlikely to succeed on the merits.  Four Supreme Court Justices voted to vacate the stay,

"an action which would have been improbable if not impossible had the government, as the stay

applicant, . . . made a strong showing that it was likely to succeed on the merits."  *CASA de*

*Maryland, Inc. v. Trump*, 971 F.3d 220, 229 (4th Cir. 2020) (Wilkinson, J.).  And while Justice

Kavanaugh voted to uphold the stay, he squarely concluded "the Centers for Disease Control and

Prevention exceeded its existing statutory authority by issuing a nationwide eviction

moratorium." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2320 (Kavanaugh, J., concurring).

Other decisions from the federal courts of appeals further suggest that the government is

unlikely to prevail.  After full briefing and argument, the Sixth Circuit held that § 361 of the

Public Health Service Act does not authorize the CDC to impose a nationwide eviction

moratorium.  *See Tiger Lily, LLC v. U.S. Dep't of Housing & Urban Dev.*, No. 21-5256, 2021

WL 3121373, at *5 (6th Cir. July 23, 2021).  The court reasoned that the section's second

sentence, which authorizes the "inspection, fumigation, disinfection, sanitation, pest

extermination, [and] destruction of animals or articles" that are "sources of dangerous infection,"

clarifies the scope of its first sentence, which authorizes the CDC to promulgate regulations

"necessary to prevent the introduction, transmission, or spread of communicable diseases."  *Id.* at

*2–3 (quoting 42 U.S.C. § 264(a)).  Because imposing a nationwide eviction moratorium is not

"similar to" those enumerated measures, the *ejusdem generis* canon excludes that option from the

agency's toolkit.  *Id.* at *3.  The Sixth Circuit also responded to several arguments in the D.C.

Circuit's judgment, including the theory that the second sentence of § 361 serves principally to

provide "express congressional authorization under the Fourth Amendment" for the measures it

describes.  *Ala. Ass'n of Realtors*, 2021 WL 2221646, at *2 (first citing *Oklahoma Press Publ'g

Co. v. Walling Wage & Hour Adm'r*, 327 U.S. 186, 201 & n.26–27 (1946), then citing *FTC v.

Am. Tobacco Co.*, 364 U.S. 298, 305–06 (1924)).  On that point, the court explained that neither

case relied upon by the D.C. Circuit would have "placed Congress on notice that giving the

Secretary authority to order inspections and fumigations would implicate the Fourth

Amendment," particularly as *Oklahoma Press* was published two years *after* the enactment of

the Public Health Service Act.  *Tiger Lily*, 2021 WL 3121373, at *3 n.2.

The Eleventh Circuit also expressed "doubts" about the CDC's statutory arguments. *See Brown v. Sec'y, U.S. Dep't of Health & Human Servs.*, No. 20-14210, 2021 WL 2944379, at *2 (11th Cir. July 14, 2021). Judge Grant, writing for the majority, explained that the CDC's authority to regulate the spread of disease under § 361 is tethered to and narrowed by "the means" specified in its second sentence. *Id.* And Judge Branch, writing separately, concluded that "neither sentence of § [361(a)] authorizes the CDC Order" and that "the Order has not been statutorily authorized through Congressional ratification." *Id.* at *28–29 (Branch, J., dissenting).

These intervening decisions call into question the D.C. Circuit's conclusion that the CDC is likely to succeed on the merits. For that reason, absent the D.C. Circuit's judgment, this Court would vacate the stay.[3] But the Court's hands are tied. The Supreme Court did not issue a controlling opinion in this case, and circuit precedent provides that the votes of dissenting Justices may not be combined with that of a concurring Justice to create binding law. *See United States v. Epps*, 707 F.3d 337, 348 (D.C. Cir. 2013) (holding that a *Marks* opinion "must embody

---

[3] The government has not met its burden of showing that the equities cut strongly in its favor, particularly given its low likelihood of success on the merits. *See Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (explaining that if "the issue on appeal presents a serious legal question on the merits," a movant may overcome a lower likelihood of success "with a strong showing as to the other three factors" (cleaned up)). Since this Court issued the stay, the government has had three months to distribute rental assistance; health care providers have administered roughly 65 million additional vaccine doses, *see* CDC, *COVID Data Tracker: Trends in Number of COVID-19 Vaccinations in the US*, https://covid.cdc.gov/covid-data-tracker/#vaccination-trends_vacctrends-total-cum (last visited Aug. 13, 2021); and the total cost of the moratoria to lessors, amounting to as much as $19 billion each month, has only increased, *see* Mem. Op. of May 14, 2014, at 9 (citation omitted). To be sure, the recent rise in Delta variant cases is troubling. But the government has made no attempt to show how many evictions its moratorium actually prevents, considering both the availability of federal rental assistance and the operation of other moratoria at the state level. Nor has the government identified any approach for evaluating when the compounding costs of the federal moratorium will outweigh its residual benefits. Given those omissions, the government has failed to make the necessary "strong showing." And because the absence of that showing warrants lifting the stay pending appeal, this Court need not address the plaintiffs' separate argument that the Administration "appears to have acted in bad faith" throughout this litigation. Pls.'s Br. at 3.

a position implicitly approved by at least five Justices who support the judgment" (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc))).  Moreover, because the four dissenting Justices did not explain their votes, it is impossible to determine which proposed disposition—theirs or Justice Kavanaugh's—is the "common denominator" of the other.  *Id.* at 348.  Further, the decisions of Sixth and Eleventh Circuit do not bind this Court.  And although district courts have discretion to reappraise the equities in extraordinary circumstances, this Court lacks the "power or authority" to reach the opposite conclusion of the D.C. Circuit on the same issues, in the same emergency posture, and in the same case.  *Briggs*, 334 U.S. at 306.

To lift the stay, the plaintiffs must accordingly seek relief before the D.C. Circuit, which may depart from the law of the case when there is an "intervening change in controlling legal authority," *LaShawn A.*, 87 F.3d at 1393, or when a previous decision was "clearly erroneous and would work a manifest injustice," *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted).

## CONCLUSION

Accordingly, it is

**ORDERED** that the plaintiffs' Emergency Motion to Enforce the Supreme Court's Ruling and to Vacate the Stay Pending Appeal, Dkt. 67, is **DENIED**.  It is further

**ORDERED** that the Third Amendment Lawyers Association's Motion for Leave to File Brief as *Amicus Curiae*, Dkt. 70, is **DENIED AS MOOT**.

**SO ORDERED.**

DABNEY L. FRIEDRICH
United States District Judge

August 13, 2021